**R. R. DONNELLEY & SONS, CO., and Protection Mutual Insurance Company, Appellants-Plaintiffs,**

v.

**HENRY–WILLIAMS, INC., Appellee-Defendant.**

**No. 3–181A22.**

Court of Appeals of Indiana, Third District.

June 29, 1981.

Patrick W. Harrison, Cline, King & Beck, Columbus, Mario C. Ciano, Pro Hac Vice, Reminger & Reminger, Cleveland, Ohio, for appellants-plaintiffs.

Richard R. McDowell, Hill, Fulwider & McDowell, Indianapolis, for appellee-defendant.

STATON, Judge.

R. R. Donnelley & Sons, Co. and Protection Mutual Insurance Company [1] (Donnelley) filed an action seeking damages in the amount of $119,053.79 against contractor Henry-Williams, Inc. Donnelley alleged that the contractor's negligence, in failing to adequately protect its property during a construction project, proximately caused the damages suffered when one of the sprinkler heads on the sprinkler system in an adjoining building froze and burst. Donnelley also alleged that Henry-Williams had breached its contract by failing to adequately protect its inventory and work in progress.[2] The court granted a summary

---

1. Pursuant to its contract of insurance with Donnelley, Protection Mutual paid Donnelley $94,053.79 and, as such, it is subrogated in that amount to Donnelley's claim against Henry-Williams, Inc. Donnelley seeks to recover its deductible of $25,000 paid under this policy.

2. Donnelley, a commercial printer, had contracted with Henry-Williams to build an addition to its Warsaw plant. As part of its work under the contract, Henry-Williams was re-

quired to demolish a portion of an existing wall of the Donnelley plant and to construct a concrete block masonry wall in its place. During the period of time between the demolition of the exterior wall and the construction of the new permanent wall, a sprinkler pipe in the Donnelley plant froze and burst. Newly-printed J.C. Penney catalogues had been stored, while awaiting shipment, in a part of the bindery building to which Henry-Williams was adding the addition. When the sprinkler burst, the

judgment for Henry-Williams and concluded that Donnelley was not entitled to recover upon either the negligence or the contract theory.

On appeal, Donnelley asks whether the trial court erred in granting the summary judgment and in concluding that the contractor was relieved of liability for any property damage loss covered by the owner's insurance.

We reverse.

Donnelley contends that there are genuine issues of material fact as to the interpretation of certain provisions of the construction contract between Donnelley and Henry-Williams. We agree. In granting the summary judgment, the court concluded that Article 10 of the contract provided that "there shall be no risk to the defendant with respect to any loss which may be covered by the insurance of plaintiff including under Article 13(C) of the contract loss coverable under the sprinkler damage coverage of plaintiff." The provisions upon which the court relied are as follows:

*"ARTICLE 10 PROTECTION OF WORK AND PROPERTY OF OTHERS*

"A. All of Contractor's operations shall be conducted in such a manner that Owner's property and the work and property of others is protected from damage or loss at all times during Contractor's work. However, notwithstanding those precautionary actions or provisions taken or made by Contractor, if any, Contractor shall be responsible for any damage or loss arising out of Contractor's operations, except those due directly to the acts or omissions of Owner, errors in written information furnished Contractor by Owner, or as may be covered by Owner's insurance."

 \* \* \* \* \* \*

"C. Owner's and Contractor's Responsibilities for Fire and Extended Coverages Insurance Hazards:

1. Owner shall assume responsibility for maintaining Fire and Extended Coverage Insurance, including vandalism, malicious mischief, and where applicable, sprinkler damage, to cover not less than the value of work performed and materials delivered to the site of the project which are to be included and remain a part of the permanent construction, whether or not installed, except as otherwise provided in paragraph 4, hereof. Contractor and/or subcontractor shall not be liable for loss or damage to such work or materials caused by fire or other perils hereinbefore enumerated, normally insured against by fire and extended coverage insurance policies; and the policies maintained by Owner to cover such value shall include without specifically naming any party other than Owner in said policies, any interests of Contractor or subcontractors in such work performed and materials delivered."

 When reviewing the granting of a summary judgment, this Court will only look to see whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665. The party seeking the summary judgment has the burden of establishing that there are no material facts in controversy and any doubt will be resolved against the movant. *Ang v. Hospital Corp. of America* (1979), Ind.App., 395 N.E.2d 441. The evidentiary matters before the court are, therefore, to be construed in a light most favorable to the non-moving party. *Krueger, supra.* Even if the facts are not in dispute, a summary judgment is inappropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Hale v. Peabody Coal Company* (1976), 168 Ind.App. 336, 343 N.E.2d 316.

catalogues were destroyed by water damage. Donnelley claims that because of Henry-Williams' failure to adequately enclose the exposed area, the high winds of wintry December weather caused the pipes to freeze and then burst.

In order for this Court to affirm the granting of the summary judgment, it would be necessary for us to be convinced that there are no genuine issues of material fact as to the interpretation of the contract-at-issue. Such, however, is not the case.

It is the duty of the court to interpret a contract so as to ascertain the intent of the parties. It must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *Evansville-Vanderburgh School Corp. v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831. The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone. *Evansville-Vanderburgh School Corp., supra; Oser v. Commercial U. Ins. Companies* (1980), Ind. App., 409 N.E.2d 706.

In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Shahan v. Brinegar* (1979), Ind. App., 390 N.E.2d 1036. If the contract is ambiguous [3] or uncertain in its terms and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the fact finder. Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations. *Huntington Mut. Ins. Co. v. Walker* (1979), Ind. App., 392 N.E.2d 1182; *Shahan, supra*. If, however, the ambiguity arises because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law to be determined by the trial court. *Huntington, supra; Clyde E. Williams & Assoc., Inc. v. Boatman* (1978), Ind.App., 375 N.E.2d 1138, 1141.

As we are bound to examine all of the provisions of a contract, rather than its individual words, phrases or paragraphs

standing alone, *Evansville-Vanderburgh School Corp., supra,* we must look beyond Article 10 and Article 13(C) in our review. In so doing, we note that there are a number of sections in the more than 100-page contract which concisely define the duties and rights of the contractor.

In 3–3.05 GENERAL PROVISIONS, A, of the section of the contract entitled DEMOLITION, Henry-Williams stated that, during demolition, the existing building would not be left unprotected to the elements which might cause damage to Donnelley's existing property and agreed to "make such provisions watertight and maintain them for as long as necessary and required." The contractor further stated, in 3–3.06 EXISTING PROPERTY, A, that he would protect all existing items and remaining property from any damage resulting from his work and agreed to "be responsible for repairing or replacing any existing items or property which is damaged as a result of his work." In Section 3–3.05 GENERAL PROVISIONS, I, He agreed that:

"1. The Contractor shall assume responsibility for any damage to Owner's existing property, if that damage is a result of his not properly sealing any opening or if he has not properly notified the Engineer and Owner of conditions which he can not properly make weatherproof and watertight."

Without a doubt, Article 10 and Article 13(C) relieve the contractor of responsibility for any damage or loss "to such work or materials" as may be covered by Donnelley's insurance. It is clear that Donnelley and Henry-Williams agreed to allocate the risk of loss as to the construction work per se and the materials utilized therein. Donnelley took the responsibility for the maintenance of fire and extended coverage insurance, including sprinkler damage, "to cover not less than the value of work performed and materials delivered to the site of the project which are to be

---

**3.** The standard for determining ambiguity is whether a reasonably intelligent person would, upon reading the contract, honestly differ as to

its meaning. *Huntington Mut. Ins. Co. v. Walker* (1979), Ind.App., 392 N.E.2d 1182.

included and remain part of the permanent construction...." Whether the company agreed, however, to accept the risk of loss on the protection of its own property from Henry-Williams' alleged negligence or breach of contract is another question, one which should be answered by a jury or a trial court in its role as a fact finder.

In view of the specificity of the clauses detailing the contractor's responsibilities during demolition, it would appear that there are genuine issues of material fact with regard to the intent of the parties as to the extent of the allocation of the risk. Because we will not construe sections of a contract as to render them meaningless, *University Casework Systems, Inc. v. Bahre* (1977), 172 Ind.App. 624, 362 N.E.2d 155, we must recognize the existent ambiguities as to the parties' intent regarding the scope of the insurance to be purchased by Donnelley and the extent of Henry-Williams' potential liability for any damage resulting from his work. Because the ambiguity in terms does not arise from the language used, *Huntington, supra,* the construction of the contract is a matter for a fact finder. A summary judgment in the case-at-bar is reversible error.

Judgment reversed and remanded to the trial court with instructions to vacate its summary judgment and to conduct further proceedings consistent with this opinion.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result.