George H. GRAHAM, et al., Appellants (Plaintiffs Below),

v.

Wilson G. ANDERSON, Executor of the Estate of Lois May Graham, Wilson G. Anderson, Executor of the Estate of Edith Anderson, Appellee (Defendant Below).

No. 2–782A216.

Court of Appeals of Indiana, Third District.

Oct. 11, 1983.

William Byer, Ronald C. Tucker, Anderson, for appellants.

Harold J. Anderson, Anderson, for appellee.

HOFFMAN, Presiding Judge.

This appeal arises from an action to construe a will and determine heirship filed by the nieces, nephews, grandnieces, and grandnephews of the decedent, Lois M. Graham. Lois died January 9, 1980. She had never married and had no children. She lived with two of her sisters who also never married, both of whom predeceased her. At one time Lois had seven brothers and sisters, all of whom predeceased her with the exception of one, Edith Anderson.

The estate was originally opened when Lois' nephew, Wilson G. Anderson, an attorney, petitioned the court for Letters of Administration and Edith was appointed Administrator. Approximately three weeks later, on January 24, 1980, Wilson offered for probate an executed carbon copy of Lois' will which had been discovered in Lois' home by the Indiana State Police during their investigation of her death. Wilson had drafted Lois' will in 1949; however, the original was destroyed in a fire at his office in 1978. The court appointed Wilson to be Executor, pursuant to the nomination in the will. The will provided that the entire estate was to go to Lois' six brothers and sisters equally, since at the time the will was executed, her seventh sister was already deceased.

At the time of Lois' death, all of her brothers and sisters were deceased except Edith Anderson, the mother of Wilson G. Anderson. She was listed in the petition for Letters as sole legatee and beneficiary of Lois' estate. On May 5, 1980, Edith died, leaving her entire estate to Wilson and his sister.

Subsequently, the appellants, who are the descendants of Lois' predeceased brothers and sisters named as legatees in her will, petitioned for construction of the will. They contended that the five-sixths bequest of Lois' estate should not lapse, but should instead pass by intestate succession. The petitioners sought to introduce extrinsic evidence which they claimed would show that Lois intended to benefit the descendants of her predeceased brothers and sisters, but the trial court refused it.

The trial court entered a judgment ordering the balance of the property in Lois' estate to be paid and transferred to Edith's estate as the sole surviving beneficiary. The appellants have appealed the trial court's judgment and present the following issues for review:

(1) whether the trial court erred in refusing to allow extrinsic evidence to show a latent ambiguity in Lois' will; [1]

(2) whether the law in Indiana with respect to the death of some, but not all, residuary beneficiaries is contrary to public policy and violative of other principles of common law; and

(3) whether the appellants are entitled to five-sixths of Lois' estate.

This Court addressed itself to the question of the use of extrinsic evidence to clarify ambiguities in the case of *Hauck v. Second National Bank of Richmond,* (1972) 153 Ind.App. 245, 286 N.E.2d 852.

"Generally, ambiguities are of two types, patent and latent. A patent ambiguity is apparent on the face of the instrument and arises by reason of an inconsistency or inherent uncertainty of language used

---

1. The first three issues enumerated in appellants' brief have been consolidated into one.

so that the effect is either to convey no definite meaning or a confused meaning. Extrinsic evidence is not admissible to explain or remove a patent ambiguity. *See: Porter v. Byrne,* (1858) 10 Ind. 146; *Munger v. Green,* (1863) 20 Ind. 38; *Baldwin v. Kerlin,* (1874) 46 Ind. 426.

"A latent ambiguity arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument. Extrinsic evidence is admissible to explain or clear up a latent ambiguity. *Miller v. Coulter,* (1900) 156 Ind. 290, 59 N.E. 853; *Skinner v. Harrison Township,* (1888) 116 Ind. 139, 18 N.E. 529; *Daugherty v. Rogers,* (1889) 119 Ind. 254, 20 N.E. 779.

*    *    *    *    *    *

"So, if a written instrument is so worded that it can be definitely interpreted and its terms carried out within the instrument by applying that language to the subject matter thereof without contradiction, then the instrument cannot be termed uncertain or ambiguous and extrinsic evidence is not admissible to vary or contradict its meaning. *Oriental Refining Co. v. Hallenbeck,* (1952) 125 Colo. 77, 240 P.2d 913; *In Re Estate of Saltzman, supra* [ (1969) 145 Ind.App. 488, 251 N.E.2d 595]." 153 Ind.App. at 261–262, 286 N.E.2d at 862.

■ Therefore, in order for the trial court to have properly considered any of the extrinsic evidence proferred by the appellants, a latent ambiguity would first have to be demonstrated.

Lois' will provided:

### "ITEM III

I give, devise, and bequeath to my six brothers and sisters: Florence M. Donner, 3341 Wichita Street, Houston, Texas; Chester Graham, R.R. # 2, Pendleton, Indiana; Ernest M. Graham, 22 Duane

Avenue, Binghanton, New York; Edith Marie Anderson, R.R. # 1, Anderson, Indiana; Edna Jane Graham, R.R. # 1, Lapel, Indiana and Raymond J. Graham, R.R. # 1, Lapel, Indiana, all the rest and residue of my estate, both real and personal, of whatever kind and wherever situate and in equal shares and being the one-sixth interest in value to each of them."

Appellants contend that there are certain facts and circumstances which can be proven extrinsically to disclose a latent ambiguity. They assert:

1) there is a rebuttable presumption that the will was honestly drawn and the scrivener in this instance was the recipient of one-half of the estate.[2]

2) There is a rebuttable presumption that Lois acted with advice and learning in the drafting of her will; however, in this instance the drafter was an interested party.

3) There is a rebuttable presumption that Lois knew the law of her state, but there is a question as to whether the scrivener was aware of the lapse provision.

4) Lois executed an agreement with her living brothers and sisters upon the death of another sister to provide for the issue of a predeceased brother in lieu of the lapse statute.

The problem with the appellants' argument is that they are placing the proverbial cart before the horse. They contend that this extrinsic evidence demonstrates an ambiguity in the will. However, the ambiguity must exist *before* you can consider extrinsic evidence.

■ Here there is no patent or latent ambiguity. The language of the will can be applied to the subject matter thereof without contradiction. The language of the will is clear and the listed residuary beneficiaries are clear. A will is not made latently

---

2. The logic of this argument escapes this Court. How could Wilson possibly have known in 1949 when this will was drafted that in 1980 when Lois died his mother would be the only surviving sibling of Lois? While attorneys are often credited with possessing many traits, the ability to predict the future is not one of them.

ambiguous merely because beneficiaries predecease the testatrix. The trial court was correct in not considering any extrinsic evidence in its construction of Lois' will.

■ In the absence of an anti-lapse statute, a devise to a deceased beneficiary lapses and rests in the remaining residuary beneficiaries. *Carey v. White, Admr., etc., et al.,* (1955) 126 Ind.App. 418, 126 N.E.2d 255. Indiana's anti-lapse statute, found at Ind.Code § 29–1–6–1(g) (1982 Burns Supp.) provides:

"(g)(1) If a devise of real or personal property, not included in the residuary clause of the will, is void, is revoked, or lapses, it shall become a part of the residue, and shall pass to the residuary devisee.

(2) Whenever any estate, real or personal, shall be devised to any descendant of the testator, and such devisee shall die during the lifetime of the testator, whether before or after the execution of the will, leaving a descendant who shall survive such testator, such devise shall not lapse, but the property so devised shall vest in the surviving descendant of the devisee as if such devisee had survived the testator and died intestate. The word 'descendant' as used in this section shall include children adopted during minority [prior to their twenty-first (21st) birthdays] by the testator and by his descendants and shall also include descendants of such adopted children. "Descendant' shall also include illegitimate children of the mother, and shall also include illegitimate children of the father, if, but only if, such child's right to inherit from such father is, or has been, established in the manner provided in IC 1971, 29–1–2–7. This rule shall apply where the parent is a descendant of the testator as well as where the parent is the testator. Descendants of such illegitimate children shall also be included."

The provision applies only to lineal descendants and not to brothers and sisters of the deceased.

The appellants contend that Indiana's anti-lapse statute is contrary to public policy and violative of principles of common law. After distillation, their argument seems to be that a majority of states have anti-lapse statutes which provide that in the case of any lapse, the devise goes to the descendants of the legatee.

■ Both the Supreme Court of Indiana [3] and the Indiana Legislature have held that in Indiana a devise will lapse unless the devisee is a descendant of the testator. Appellants have not persuaded this Court that it should rule differently.

■ Lois' will was not ambiguous. Her bequests to her brothers and sisters who predeceased her lapsed and vested in the surviving beneficiary, Edith. Therefore, the appellants, as issue of the brothers and sisters who predeceased Lois, are not entitled to five-sixths of Lois' estate.

The trial court is in all things affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.