**OHIO CASUALTY GROUP OF INSURANCE COMPANIES, Plaintiff-Appellee,**

v.

**Raymond GRAY and Carl J. Hallgarth, Defendants-Appellants.**

No. 83–2865.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1984.

Decided Oct. 17, 1984.

As Amended Oct. 19, 1984.

---

Matthew Jay Lane, Walker, Chatfield & Doan, Cincinnati, Ohio, for defendants-appellants.

Charles E. MacGregor, Orbison, O'Connor, MacGregor & Mattox, New Albany, Ind., for plaintiff-appellee.

Before PELL, CUDAHY, and ESCHBACH, Circuit Judges.

PELL, Circuit Judge.

This appeal presents a question of Indiana law involving an ambiguity in an insurance contract. The district court ruled that, as a matter of law, the insurance policy issued by plaintiff Ohio Casualty Group of Insurance Companies (Ohio Casualty) to the Town of Moores Hill, Indiana did not provide liability coverage for the alleged contretempts of defendant Raymond Gray, town marshal of Moores Hill.

Ohio Casualty requested a declaratory judgment that it was not obligated to defend or indemnify defendant Gray in a pending personal injury suit brought by defendant Carl J. Hallgarth. The injuries in the underlying suit occurred when a service revolver belonging to Gray discharged and wounded Hallgarth; at the time of the incident Gray was acting as town marshal. Ohio Casualty had issued a general liability insurance policy for the Town of Moores Hill, providing coverage for acts of the insured's "executive officers, directors, and stockholders" when they were acting within the scope of their duties. The request for declaratory judgment was based on Ohio Casualty's contention that Gray, as town marshal, was not an executive officer of the municipality and that his acts were therefore not covered by the insurance policy.

The district court granted judgment for Ohio Casualty, holding that application of the policy term "executive officer" to the facts of the case created a patent ambiguity and consequently raised a question of law, not fact. Looking to the terms of the contract to determine the "manifest intent of the parties," the district court further held that policemen, and consequently town marshals, were not "executive officers" of their municipality.

Defendants appeal from that ruling. They dispute the court's conclusion that the term executive officer excludes policemen as a matter of law. Their principal argument, however, is that the ambiguity in the contract is latent, not patent, and therefore raises a question of fact as to the intent of the parties at the time of formation. They contend that parol evidence should be admitted to determine this question of fact at trial, and they offer the affidavits of two members of the Moores Hill Town Board indicating that the board intended to provide coverage for Gray's official acts and was of the impression that it had done so.

### I.

The initial determination to be made is whether the ambiguity contained in the insurance contract is latent or patent. The ambiguity recognized by the district court and both parties arises from the fact that the municipality was insured by a contract whose terms were designed for individuals, partnerships, corporations, and joint ventures. The policy contains the following provision:

### II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

. . . . .

(c) if the named insured is designated in the Declarations as other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

The named insured is described as "municipality" in the Declarations of the policy in question. The individuals whose acts are covered by the policy would be more capable of identification if the named insured were a corporation. However, the descriptions do not clearly fit positions associated with a municipality. A contract is ambiguous where reasonable people could find its terms susceptible to more than one interpretation. *Marksill Specialities, Inc. v.*

*Barger,* 428 N.E.2d 65 (Ind.App.1981). Here, the terms "executive officer, director or stockholder" could reasonably be interpreted in several different ways when those terms are applied to a municipality. Therefore, as all parties agree, an ambiguity is present.

Indiana law, as well as the law of other jurisdictions, recognizes the distinction between patent and latent ambiguities. A patent ambiguity is one "apparent on the face of the instrument and [arising] by reason of any inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning." *Graham v. Anderson,* 454 N.E.2d 870, 872 (Ind.App.1983). On the other hand, a latent ambiguity "arises not upon the face of the instrument by virtue of the words used but emerges in attempting to apply those words in the manner directed in the instrument." *Id.* Indiana also recognizes "Lord Bacon's ancient rule that a latent ambiguity may be explained by extrinsic evidence, but a patent ambiguity may not." *Hauck v. Second National Bank of Richmond,* 153 Ind.App. 245, 286 N.E.2d 852, 862 (1972).

Defendants argue that the ambiguity in this contract is latent and, therefore, that the meaning of the term "executive officer" may be determined by extrinsic evidence. They refer to the affidavits of the town board members as demonstrating their point. The existence of a latent ambiguity, however, is not established in that manner. Latent ambiguities arise, as noted above, when the terms of the instrument are clear but cannot be applied because they do not fit the factual circumstances to which they are addressed. The ambiguity must exist before extrinsic evidence can be considered. *Graham v. Anderson,* 454 N.E.2d at 872.

In this case, the word "municipality" was inserted in the Declarations in the space where the insured was to be described as either an individual, partnership, corporation or joint venture, but the terms of the contract were unchanged. The policy

itself does not contain inconsistent or confusing provisions, and the difficulty in application arises only when the policy terms are applied to a particular fact situation. Viewed in this fashion, the ambiguity is latent. On the other hand, the insured *is* designated in the policy as a municipality. The identity of the "executive officers, directors or stockholders" of a municipality is a puzzle without any reference to the peculiar facts of this municipality or to the formation of this contract. So, to that extent, the ambiguity can be seen as patent.

We are aware of no Indiana case dealing with an ambiguity of precisely this nature. However, in *Grant v. North River Insurance Co.*, 453 F.Supp. 1361 (N.D.Ind.1978), the United States District Court for the Northern District of Indiana was presented with a nearly identical situation. In that case the insured was a municipality and the North River Insurance Company's liability policy was on a form appropriate for use by individuals, partnerships, joint ventures, or corporations. That policy contained a provision describing "Persons Insured" that was identical to item II(c) in the policy now before us. In *Grant*, the district court found that the ambiguity arose because "the insurer utilized a form of contract common to the private business world but foreign to the world of municipal corporations," and ruled that parol evidence "bearing on the intent of the parties in negotiating the North River policy" was to be admitted. *Id.* at 1366.

The *Grant* decision did not discuss whether the ambiguity was latent or patent, but in a footnote the district court recognized the distinctions that are the result of such classification. The court noted that parol evidence would not have been admissible to eliminate coverage that was "unambiguously provided" by the contract. *Id.* at 1366 n. 1. As an example, the court noted that the mayor and members of the city council could be classified as "executive officers" or "directors" of the insured municipality. Therefore, parol evidence would not be appropriate to rebut the reasonable reading of the terms of the policy that those individuals were covered. But

where, as in *Grant*, the individuals sued cannot properly be classified as executive officers or directors, extrinsic evidence is to be admitted to determine the intention of the parties regarding the scope of coverage. *Id.*

We believe this result accords with our earlier discussion of Indiana law and with the concept of patent and latent ambiguities. The identity of an "executive officer" (and possibly a "director") of a municipality is ambiguous, but that ambiguity is apparent on the face of the contract and is therefore patent. The reasonable meaning of "executive officer" will be given force and, as a matter of law, the policy is determined to provide coverage for those who clearly fit into that definition. We agree that at least the mayor and city council are included in this term; there may be others. Extrinsic evidence may not be introduced to rebut the reasonable interpretation that can be gleaned from the four corners of the contract. *Hauck v. Second National Bank of Richmond*, 286 N.E.2d at 863.

However, with respect to most other city workers, the difficulty in determining whether they are covered by the policy is not apparent until there is an occasion to give effect to the policy's terms. Coverage for the acts of parties who are not "executive officers" would appear to be intended: the policy specifically includes "directors" and "stockholders" as well. But the policy provides no clue as to who these others would be in a municipal, rather than a corporate, setting. When the question is whether another city official (e.g., a police officer, chief of police, engineer, chief engineer, or the like) is covered by the policy, the terms and definitions do not provide an answer and there is nothing in the policy from which a "reasonable" interpretation can be drawn. Any conflict arises not from the language used but from the extrinsic facts of the situation. The question, therefore, is one of fact, not one of law. *R.R. Donnelley & Sons, Co. v. Henry Williams, Inc.*, 422 N.E.2d 353, 356 (Ind.App. 1981). There are no words or terms from which the parties could know or have rea-

son to know the meaning to be attached. *Board of Directors, Benjamin Davis Conservancy District v. Cloverleaf Farms, Inc.,* 171 Ind.App. 682, 359 N.E.2d 546, 549 (1977), *reh'g. denied,* 171 Ind.App. 682, 360 N.E.2d 1039 (1977).

In *Grant,* the court was asked to determine if police officers were intended to be covered by the policy in question. Testimony was taken from the insurance agent who negotiated the policy. He testified that police officers, who would be classified as city employees, were not covered by the policy and that he had discussed with city officials the possibility of purchasing additional coverage to include employees as insureds. The city had declined to do this for budgetary reasons. There was no rebuttal testimony, and the court ruled that the police officers were not covered. 453 F.Supp. at 1366. We believe that accepting testimony of this nature is the only effective and rational way to determine the intention of the parties in questions of this sort.[1]

In the case before us, the object of the underlying lawsuit is the town marshal. As the head law enforcement official, he could arguably be considered an "executive officer" or possibly a "director." Under the facts of which the court is aware, he could also be considered a part-time employee with limited duties, and negotiations could have proceeded along the lines of those in *Grant.* We simply do not know and cannot know from anything contained on the face of the policy whether it was intended that the policy would cover the official acts of defendant Gray. We therefore hold that the identity of persons intended to be covered by this policy is ambiguous. We further hold that with respect to any municipal workers other than those who are clearly "executive officers" that ambiguity is latent and parol evidence may be introduced to determine the intentions of the parties at the time the contract was formed.

## II.

We make this holding in full awareness that, when similar situations have arisen in other states,[2] the courts have typically determined whether a given individual is covered by the policy as a question of law, and that question has been decided without recourse to extrinsic evidence. Indeed, it is partially the number of such cases, the diverse routes taken to resolution, the conflicting results, and the difficulties encountered by those courts that reassures us of the correctness of our decision today.

One approach frequently taken has been to determine "executive officers" primarily by analogy to cases construing that term in a private corporation context, distinguishing between the policymaking and ministerial roles of city workers. *Pullen v. Cincinnati Insurance Company, Inc.,* 400 So.2d 393 (Ala.1981); *Holm v. Mutual Service Casualty Insurance Company,* 261 N.W.2d 598 (Minn.1977); *Petzak v. Graves,* 33 Wis.2d 175, 147 N.W.2d 294 (1967). Although this has been characterized as the majority view, *Pullen v. Cincinnati Insurance Company, Inc.,* 400 S.2d at 401, other courts have determined "executive officers" by reference to a governmental, rather than corporate, structure and found that coverage was intended to be given to those who are members of the executive branch

---

1. Since it appears that a number of municipalities are covered by policies that were drafted for individuals or private businesses, this may seem to put an undue burden on the insurance companies. We are saying, in effect, that there is a relevant question of fact whenever a municipal worker, other than one who is clearly an "executive officer," is the object of a lawsuit in this situation. This may require that a number of insurance agents will have to spend time in court testifying about the negotiation of individual policies. This burden can be easily avoided, however, if the insurance companies issue policies to municipalities in a form designed to fit the situation. Indeed, the solution might be as simple as adding another clause to the section identifying "persons insured." The insured municipalities should not bear the risk of losing or having to fight for coverage for which they have negotiated and paid premiums.

2. In all the cases discussed in this section, an insurance policy designed for individuals, partnerships and corporations was issued, without change, to a municipality.

of government. *Bouis v. Employers Liability Assurance Corp.*, 160 So.2d 36 (La. App.1964). One case turned on the existence of an attached rating schedule showing that a specific premium was charged for "police activities." Because that schedule was part of the policy, it was held that police officers were intended to be covered. *Ohio Farmers Insurance Co. v. Landfried*, 348 F.Supp. 486 (W.D.Pa.1972). An identical schedule attached to another policy, however, was deemed to relate to risks insured against rather than the persons whose acts were insured, and therefore it was not seen as dispositive. *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d at 602. To our knowledge, no case has addressed the possibility that there might be municipal equivalents for the "directors" or "stockholders" of a corporation, although each of the policies involved specifically provides coverage for those individuals.

We do not feel confident that any of these approaches will, in a given instance, be likely to arrive reliably at the intention of the parties at the time the contract was formed or even a reasonable approximation of their probable expectations. If the individual sued is a regular police officer, he would be covered if a governmental approach is taken and would be denied coverage if a corporate analogy is used. The difference in outcome reflects not any difference in policy terms or negotiations of the parties but rather the jurisdiction in which the matter is addressed. This bolsters our conclusion, stated earlier, that these policies do not contain anything which leads to a "reasonable" construction of the contract unless the individual in question is undisputably an "executive officer" of the municipality. When the ambiguity arises from application of the policy, rather than from the terms of the policy itself, it is proper to turn to extrinsic evidence to determine the intentions of the parties.

The continued appearance of this problem is, as we noted in footnote 1, unfortunate and unnecessary. Insurance policies designed to fit the circumstances and identity of the insured should be a goal of all involved. However, as long as insurance companies continue to issue to municipalities policies designed for private individuals and businesses, we believe that the rule announced today to be the most correct and most fair.

The judgment of the district court is RE-VERSED and the case REMANDED for further proceedings in accordance with this opinion.