**AMERICAN NATIONAL FIRE INSURANCE CO., Plaintiff,**

v.

**ROSE ACRE FARMS, INC., Cynthia L. Wilson, as Personal Representative of the Estate of Jeffrey L. Wilson, and Robert Garland, Defendants.**

No. IP 93–0085–C.

United States District Court, S.D. Indiana, Indianapolis Division.

March 7, 1994.

Richard R. McDowell, Donald D. Levenhagen, Hill Fulwider McDowell Funk & Matthews, P.C., Indianapolis, IN, for plaintiff.

Brian K. Burke, J. Joseph Tanner, Baker & Daniels, Michael R. Conner, Janet B. Norton, Barnes & Thornburg, Indianapolis, IN, for defendants.

BARKER, Chief Judge.

### ENTRY

This case requires the Court to interpret language from an insurance contract that Plaintiff American National Fire Insurance Co. ("ANFIC") issued to Defendant Rose Acre Farms, Inc. ("Rose Acre"). ANFIC and Rose Acre present the Court with their respective motions for summary judgment. For the reasons explained below, ANFIC's motion is denied and Rose Acre's motion is granted.

## I. BACKGROUND

On December 10, 1991, Rose Acre's Beechcraft airplane crashed shortly after takeoff from the Jasper County, Indiana, airport. Passengers Jeffrey L. Wilson and Robert Garland were injured, and Wilson later died. Wilson's estate brought a wrongful death action against Rose Acre, prompting Rose Acre to request liability coverage from ANFIC. Based on the terms of its umbrella liability policy (the "Policy") with Rose Acre, ANFIC denied the request. This lawsuit ensued.

The parties are unable to agree on what the terms of the Policy mean. It provides the following coverage:

**I. A. Insuring Agreement**

1. We [ANFIC] will pay those sums in excess of "underlying insurance" or the retained limit that the "insured" becomes legally obligated to pay as damages because of "injury" caused by an "occurrence" to which this policy applies.[1]

Policy, at 1.

The Policy also contains various exclusion provisions:

**I. B. Exclusions**

. . . .

5. This policy does not apply, except to the extent that coverage is available to the "insured" in the "underlying insurance," to:

a. Any employee of the "insured" with respect to "injury" to another employee in the course of employment.

b. "Injury" arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft over 50 feet in length, if such watercraft is owned or chartered without crew by or on behalf of any "Insured." But this exclusion shall not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

c. "Injury" arising out of the ownership, maintenance, operation, use, loading or unloading of an aircraft, if such aircraft is owned or hired without pilot or crew by or on behalf of the "Insured."

Policy, at 3. ANFIC argues that Rose Acre is not entitled to coverage because no aircraft liability policy was listed in the Schedule of Underlying Insurance.

The preface to the Umbrella's owned aircraft exclusion at issue states "[t]his policy does not apply, except to the extent that coverage is available to the 'Insured' in the 'underlying insurance'. . . ." Since 'underlying insurance' is specifically defined as 'liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance,' umbrella aircraft liability coverage exists only if the Schedule of Underlying Insurance includes a policy providing aircraft liability coverage.

ANFIC's Brief in Support of Summary Judgment, at 6. Although Rose Acre procured an American Eagle Insurance Co. aircraft insurance policy through Wenk Aviation Insurance Agencies, that policy, according to ANFIC, was not eligible for listing on the Schedule of Underlying Insurance because the liability limit for each passenger, $100,-000, was too low. *Id.* at 7–8. Four months before the crash, M–J Insurance, which acted as an intermediary between Rose Acre and ANFIC, advised Rose Acre that:

[ANFIC] would be able to add Aircraft coverage to the Umbrella policy when you get the passenger limit on the Aircraft policy increased from $100,000 per seat to $1,000,000 per seat. As I understand it from the quotation that you received from Wenk Aviation Insurance that you should be able to get that passenger limit increased once your pilot gets his instrument rating. Please advise when that is done.

---

1. The Policy's definitions of "retained limit" and "underlying insurance" are:

**III. C.** The amount stated on the Declarations as the Retained Limit is the amount of the damages you will pay when the "injury" is covered by the policy and not covered by "underlying insurance."

Policy, at 4.

**V. L.** "Underlying Insurance" means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance, for the limits and periods indicated. . . . "Underlying insurance" includes only policies shown in the Declarations or endorsed onto this policy.

Policy, at 8.

Fish Depo., Plaintiff's Exhibit 14. According to ANFIC, Rose Acre did not get the passenger limit raised to $1,000,000 and did not dispute ANFIC's position that the Policy did not cover aircraft liability. *See* ANFIC's Brief in Support of Motion for Summary Judgment, at 10.

ANFIC also points to a letter dated July 22, 1991, where M–J advised Rose Acre that:

> Once the pilot does complete that instrument reading course, then you should contact the insurance company to get higher limits of coverage. *Your Umbrella policy does not go over the aircraft policy.* I am checking with the Umbrella carrier to see what primary limits they require in order for their Umbrella to go over that policy and as to date they have not yet provided me with that information. ·

Fish Depo., Exhibit 4 (emphasis added). Rose Acre did not protest ANFIC's conclusion in this letter that no coverage was then available. *See* Reply in Support of ANFIC's Brief in Support of Summary Judgment, at 4.

In the alternative, ANFIC argues that the Owned Aircraft exclusion, subpart 5(c), relieves it of any duty to provide liability coverage to Rose Acre. It reads the clause in that subsection, "if such aircraft is owned or hired without pilot or crew", so that "owned" is not modified by "without pilot or crew." In this way, airplane ownership excludes coverage under the Policy. ANFIC contends that the heightened risk associated with the operation of an airplane makes its interpretation reasonable and that "to speak of an aircraft as owned 'with or without pilot' is illogical since no plane can fly without a pilot." *Id.* at 12.

■ In support of its motion for summary judgment, Rose Acre argues that grammatical analysis of the exclusion plainly reveals that it is not ambiguous and does not bar coverage because Rose Acre owned and operated its plane with its own pilot. Rose Acre believes that "without pilot or crew" in subpart 5(c) modifies both "owned" and "hired".

If this reading were accepted, Section 1(A) would then require ANFIC to provide coverage since the damages in this matter far exceed the "retained limit". In the alternative, Rose Acre contends that the exclusion is ambiguous and that ANFIC is obligated to provide coverage since ambiguous insurance exclusions, under Indiana law, must be read in favor of the insured. An exclusion in an insurance policy will be enforced only when the insurer demonstrates that the policy unmistakably excludes coverage for the claim. *See Asbury v. Indiana Union Mutual Ins. Co.,* 441 N.E.2d 232, 242 (Ind.App. 1 Dist. 1982). Rose Acre also urges the Court not to rely on M–J's or ANFIC's correspondence with Rose Acre which, in its view, contains nothing more than self-serving interpretations of the Policy. Lastly, Rose Acre argues that there is no requirement that the policy holder have "underlying insurance" since:

> the "underlying insurance is referenced in the exclusion to provide coverage when the exclusion otherwise precludes coverage. If the exclusion does not apply, then coverage is provided whether or not there is underlying insurance. If underlying insurance exists, the Policy pays coverage above the underling [sic] insurance. If there is no underlying insurance, the Policy pays claims over the retained limit of $10,000. See Policy §§ I(A) and III(C). The existence or nonexistence of underlying insurance does not (and cannot) determine whether there is coverage under the Policy.

Response of Rose Acre to Plaintiff's Motion for Summary Judgment, at 7; Brief in Support of Summary Judgment, at 16–17.[2]

## II. ANALYSIS

### A. *Summary Judgment Standards*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the movant shows by plead-

---

**2.** The parties have presented the Court with two separate sets of briefing on the same issues. The first set addresses ANFIC's motion for summary judgment, and the second set addresses Rose Acre's. For future reference, the better practice is for the party that responds to the first motion for summary judgment to combine its arguments opposing that motion with those that support its own cross-motion. This avoids duplication of effort and the Court having to sort through two stacks of paper when one is sufficient.

ings, discovery, and affidavits that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). "Summary judgment is designed to head off a trial if the opposing party does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice." *Karazanos v. Navistar International Transp. Corp.*, 948 F.2d 332, 338 (7th Cir.1991). It is especially appropriate where the issues in dispute are purely legal, *see, e.g., American Jewish Congress v. City of Chicago*, 827 F.2d 120, 123 (7th Cir.1987), as often occurs in cases involving contract interpretation. In these circumstances, the need for trial is avoided because there are no genuine issues of material fact that must be resolved.

### B. *Rules of Insurance Contract Construction*

The court's goal when analyzing contractual language is to ascertain and enforce the parties' intent as manifested in the insurance contract. *See American Family Mutual v. National Insurance*, 577 N.E.2d 969, 971 (Ind.App. 2 Dist.1991). Typically, intent is easy to discern because the contractual language is clear and unambiguous. When it is not, the court must rely on established rules of contract interpretation to discover the parties' intent. "Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts." *Eli Lilly & Co. v. Home Insurance Co.*, 482 N.E.2d 467, 470 (Ind. 1985); *Meridian Mutual Insurance Co. v. Cox*, 541 N.E.2d 959, 961 (Ind.App. 2 Dist. 1989). "The language of the policy must be reasonably construed by the court which may not find coverage unless the language of the

policy admits liability." *Red Ball Leasing v. Hartford Accident and Indemnity Co.*, 915 F.2d 306, 308–309 (7th Cir.1990), *citing, Stockberger v. Meridian Mutual Insurance Co.*, 182 Ind.App. 566, 395 N.E.2d 1272, 1277 (Ind.App. 3 Dist.1979).

To determine whether policy language is ambiguous under Indiana law, the court must determine "if reasonable persons may honestly differ as to the meaning of the policy language." *Eli Lilly & Co.*, 482 N.E.2d at 470. If an ambiguity is found, that "language should be interpreted to further the policy's purpose of indemnity. The language should be strictly construed against the insurer." *Id.* at 470; *Tate v. Secura Insurance*, 587 N.E.2d 665, 668 (Ind.1992); *American States Insurance Co. v. Braden*, 625 N.E.2d 1252, 1255 (Ind.App. 3 Dist.1993).

Not all ambiguities in insurance contracts are the same, however, at least not in Indiana, which recognizes the distinction between patent and latent ambiguities. Applying Indiana law, the Seventh Circuit has described the difference in the following terms:

> A patent ambiguity is 'apparent on the face of the instrument and [arising] by reason of any inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning. On the other hand, a latent ambiguity 'arises not upon the face of the instrument by virtue of the words used but emerges in attempting to apply those words in the manner directed in the instrument.'

*Ohio Casualty Group of Insurance Companies v. Gray*, 746 F.2d 381, 383 (7th Cir. 1984), *citing, Graham v. Anderson*, 454 N.E.2d 870, 872 (Ind.App. 3 Dist.1983) (citation omitted).[3]

---

**3.** In a recent decision, the Seventh Circuit described the distinction as follows: "[A]n ambiguity is patent when it 'can be cleared up by a careful reading' of the contract, or where 'the only reasonable inference is that the parties failed to reach agreement.'" *Superbird Farms, Inc. v. Perdue Farms, Inc.*, 970 F.2d 238, 244 (7th Cir.1992), *citing, Amoco Oil Co. v. Ashcraft*, 791 F.2d 519, 521 (7th Cir.1986). A latent ambiguity may be explained by extrinsic evidence but a

patent ambiguity may not. "If the contract is clear on its face but does not clearly resolve the specific contingency that has arisen, maybe because no one thought of the contingency when the contract was drafted, the court will admit evidence to show how the parties would have dealt with the contingency had they made specific provision for it." *Amoco Oil*, 791 F.2d at 521; *see also Trustees of First Union Real Estate v. Mandell*, 987 F.2d 1286, 1290 (7th Cir.1993).

■ When an ambiguity arises in an exclusion, the court's examination is even more exacting. "[U]nless the exclusion clearly and unmistakably brings within its scope the particular act or omission that will bring it into play, the exclusion will be ineffective to exclude or destroy coverage." *Indiana Insurance Companies v. Granite State Insurance Co.*, 689 F.Supp. 1549, 1557 (S.D.Ind.1989). The Seventh Circuit provides the following guidance on this point:

> [I]t is well-settled that where the language of an insurance contract is so ambiguous as to be susceptible of more than one interpretation, the court will adopt the construction most favorable to the insured. This is all the more so where the particular provision in dispute purports to create an exclusion from coverage under the general terms of the policy. A condition or exclusion in an insurance contract, therefore, in order to be effective, must clearly and unmistakingly bring within its scope the particular act or omission that will bring the condition or exclusion into play. Coverage will not be excluded or destroyed by an exclusion or condition unless such clarity exists.

*Sur v. Glidden–Durkee*, 681 F.2d 490, 496 (7th Cir.1982), *citing, Huntington Mutual Insurance Co. v. Walker*, 181 Ind.App. 618, 392 N.E.2d 1182, 1185 (Ind.App. 1 Dist.1979) (citations omitted); *see also Allstate Insurance Co. v. Brown*, 16 F.3d 222, 224 (1994), *citing, Freeman v. Commonwealth Life Insurance Co.*, 259 Ind. 237, 286 N.E.2d 396, 397 (1972); *Evans v. National Life Accident Insurance Co.*, 467 N.E.2d 1216, 1219 (Ind. App. 2 Dist.1984) ("An exclusion will be given effect only if it unmistakably brings the act or omission with its scope.").

### C. *Application*

■ ANFIC's first argument is that Rose Acre is not entitled to coverage because no aircraft liability policy was listed in the Schedule of Underlying Insurance. It directs the Court to Exclusion 5, which provides that:

> This policy does not apply, *except to the extent that coverage is available to the 'insured' in the 'underlying insurance,'* to:

. . . . (c) "Injury" arising out of the ownership, maintenance, operation, use, loading or unloading of an aircraft, if such aircraft is owned or hired without pilot or crew by or on behalf of the 'Insured'.

Policy § I(B)(5), at 3. (emphasis added). Contrary to ANFIC's argument on this point, the exception to the exclusion (*i.e.* "the extent [to which] coverage is available to the 'insured' in the 'underlying insurance'") does not interfere with the Policy's basic coverage provision, which provides:

### I. A. Insuring Agreement

1. We [ANFIC] will pay those sums in excess of "underlying insurance" or the retained limit that the "insured" becomes legally obligated to pay as damages because of "injury" caused by an "occurrence" to which this policy applies.

Policy, at 1. When interpreting contractual language, the Court is mindful that it "must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting." *R.R. Donnelley & Sons Co. v. Henry–Williams, Inc.*, 422 N.E.2d 353, 356 (Ind.App. 3 Dist.1981). An interpretation that reconciles sections I(A)(1) and I(B)(5) is that the exclusions listed in I(B)(5)(a), (b), and (c) are exceptions to the coverage outlined in section I(A)(1), while section I(B)(5) itself provides an exception to the exclusions which arises when "coverage is available to the 'insured' in the 'underlying insurance'. . . ." That section I(B)(5) in certain circumstances restores coverage does not modify the Policy's original grant of coverage, however. If the exclusion is inapplicable, the Policy provides coverage whether or not there is underlying insurance. If the exclusion can be invoked and underlying insurance exists, the Policy pays coverage above the underlying insurance. Otherwise, the Policy pays claims over the retained limit of $10,000. This interpretation also is consistent with the Policy's definition of "retained limit" which specifically acknowledges that coverage can still be provided in the absence of "underlying insurance":

### III. C. The amount stated on the Declarations as the Retained Limit is the amount of the damages you will pay

when the "injury" is covered by the policy and not covered by "underlying insurance."

Policy, at 4. ANFIC's reading would require the Court to disregard the reference to the "retained limit" in section I(A)(1). It also would require the Court to read section I(B)(5) in isolation from its subsections. This is significant because the parties disagree about the meaning of the phrase in subsection I(B)(5)(c) which states "if such aircraft is owned or hired without pilot or crew by or on behalf of the 'Insured.'" Policy § I(B)(5), at 3. ANFIC contends that "without pilot or crew" modifies "hired", while Rose Acre believes that it modifies "owned" and "hired". Both sides argue that the phrase is unambiguous, though Rose Acre argues in the alternative that it is ambiguous.

The reasonableness of the interpretations that each side advances in their respective briefs concerning the meaning of subpart (c) persuades the Court that it is ambiguous, since "reasonable persons may honestly differ as to the meaning of the policy language." *Eli Lilly & Co.*, 482 N.E.2d at 470. At a minimum, it is unclear whether "pilot or crew" is used in a generic sense, so that anyone who operates the plane is included, or whether it refers to employees who are retained specifically in that capacity. In addition, the ambiguity is patent because it "is 'apparent on the face of the instrument and [arising] by reason of any inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning.'" *Ohio Casualty*, 746 F.2d at 383, *citing, Graham*, 454 N.E.2d at 872. This is not a situation where the language at issue is plain on its face and the difficulty arises by way of application to a particular factual scenario that the parties failed to contemplate.[4] *See id.* There being

no latent ambiguity, the Court is not at liberty to look outside the contract to discover the parties' intent. *See Amoco Oil*, 791 F.2d at 521.

■ Having found that subpart I(B)(5)(c) is ambiguous, the Court must also conclude that the exclusion itself is ineffective. Exclusionary language "must clearly and unmistakingly bring within its scope the particular act or omission that will bring the condition or exclusion into play. Coverage will not be excluded or destroyed by an exclusion or condition unless such clarity exists." *Glidden–Durkee*, 681 F.2d at 496, *citing, Huntington Mutual Insurance Co.*, 392 N.E.2d at 1185; *see also Evans*, 467 N.E.2d at 1219 ("An exclusion will be given effect only if it unmistakably brings the act or omission within its scope."). Subpart (c) fails to meet this standard. The Court therefore strictly construes the policy against ANFIC, *see Eli Lilly & Co.*, 482 N.E.2d at 470; *Tate v. Secura Insurance*, 587 N.E.2d 665, 668 (Ind. 1992), and rejects its arguments concerning the interpretation of sections I(A)(1) and I(B)(5). Rose Acre has met its summary judgment burden, *supra*. ANFIC has not. Rose Acre is entitled to coverage under the Policy.

## CONCLUSION

Rose Acre's motion for summary judgment is granted, and ANFIC's motion for summary judgment is denied.

It is so ORDERED.

## JUDGMENT

In accord with the Court's entry in the above named cause, Rose Acre's motion for summary judgment is granted, and ANFIC's motion for summary judgment is denied. Judgment is entered in favor of the Defendants and against the Plaintiff on all of Plain-

---

4. The language at issue in subpart (c) does not fit squarely within the definitions of "patent" and "latent" ambiguity that the Seventh Circuit employed in *Superbird Farms, supra,* and *Mandell,* 987 F.2d at 1290. As concerns the former, it can neither be " 'cleared up by a careful reading' of the contract", nor is it fair to say that " 'the only reasonable inference is that the parties failed to reach agreement.'" *Superbird Farms,* 970 F.2d at 244, *citing, Amoco Oil,* 791 F.2d at 521. The language also does not fit within the definition of

latent ambiguity. *Id.* The Court therefore relies on the definition of patent ambiguity that the Seventh Circuit used in *Ohio Casualty,* 746 F.2d at 383, which finds support in various Indiana cases. *See, e.g., Indiana–Kentucky Electric Corp. v. Green,* 476 N.E.2d 141, 146 (Ind.App. 1 Dist. 1985); *Graham v. Anderson,* 454 N.E.2d 870, 872 (Ind.App. 3 Dist.1983); *Michigan Mutual Insurance Co. v. Combs,* 446 N.E.2d 1001, 1004 (Ind. App. 2 Dist.1983).

tiff's claims. This matter is hereby dismissed with prejudice. Each of the parties is to bear its respective costs in this case.

It is so ORDERED.