107 F.3d 451
 AMERICAN NATIONAL FIRE INSURANCE COMPANY, Plaintiff-Appellant,
v.
ROSE ACRE FARMS, INCORPORATED, Cynthia L. Wilson, as
personal representative of the Estate of Jeffrey
L. Wilson, and Robert Garland,
Defendants-Appellees.
 No. 96-1105.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 19, 1996.
Decided Feb. 12, 1997.
 
 Christine L. Olson, D. Kendall Griffith, argued, Fritz K. Huszagh, Hinshaw & Culbertson, Chicago, IL, Donald D. Levenhagen, Richard R. McDowell, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, for Plaintiff-Appellant.
 Brian K. Burke, argued, John Joseph Tanner, Baker & Daniels, Indianapolis, IN, for Defendants-Appellees.
 Before COFFEY, FLAUM, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 American National Fire Insurance Co. ("ANFIC") sued Rose Acre Farms ("Rose Acre") seeking a declaratory judgment that the umbrella liability insurance policy it had issued excluded coverage for an aircraft owned and operated by Rose Acre. That aircraft had crashed, killing a passenger. The district court below entered summary judgment for Rose Acre. The court found the aircraft exclusion patently ambiguous and thus inoperative, applying Indiana law which favors saving insurance coverage in the face of an ambiguous exclusion. The court also found that a misrepresentation on Rose Acre's application for insurance was not material because it would not have affected the policy ANFIC actually issued. We affirm the entry of summary judgment for Rose Acre.
 
 I.
 
 2
 Rose Acre purchased umbrella insurance from ANFIC providing for liability coverage above existing underlying insurance or above a retained limit. The policy, which became effective January 1, 1991, contained an exclusion for certain aircraft operations.
 
 
 3
 At the time it applied for coverage, Rose Acre represented that it owned no airplanes. Later, in July of 1991, Rose Acre purchased a Beechcraft airplane which crashed in December of that year killing one of the passengers on board. The decedent's survivors sought recovery from Rose Acre, which in turn sought coverage under its umbrella policy from ANFIC. Following the crash, Rose Acre notified its insurance agent who notified Marion Agency, ANFIC's underwriter in Indiana. Kevin Culley, an underwriter for Marion who had reviewed the initial application and caused ANFIC to issue the policy, added a total aircraft exclusion the day he learned of the crash. ANFIC rejected the proposed additional exclusion because it believed the policy as issued already excluded coverage for aircraft.
 
 
 4
 ANFIC sued Rose Acre seeking a declaratory judgment that the policy it had issued excluded coverage for the Beechcraft. Both parties moved for summary judgment. ANFIC argued that the policy excluded coverage for aircraft owned and operated by Rose Acre. Rose Acre contended the exclusion did not apply to the Beechcraft. Each party argued that the policy language supported its position, although each also argued in the alternative that the language was ambiguous. The district court agreed that the disputed language was ambiguous. Applying Indiana law, the court refused to consider extrinsic evidence of the parties' intent or understanding because the ambiguity was patent. Applying Indiana rules of insurance contract construction, the court ruled that the ambiguous exclusion must be disregarded in favor of coverage for the insured. Accordingly, the court entered summary judgment for Rose Acre.
 
 
 5
 In March of 1994, about the same time the district court issued its initial summary judgment order, ANFIC learned that when Rose Acre originally applied for insurance and represented that it owned no aircraft, it in fact owned an airplane in Paraguay, where Rose Acre owned a number of farms. ANFIC claimed this constituted a material misrepresentation invalidating the insurance contract. The district court vacated its entry of summary judgment to permit additional discovery on the misrepresentation issue. Both parties thereafter again moved for summary judgment. In support of its material misrepresentation claim, ANFIC submitted Culley's deposition that, had he known of the Paraguay airplane, he would not have issued a policy with the qualified aircraft exclusion contained within Rose Acre's policy but, instead, would have issued a policy with a total aircraft exclusion. The district court rejected the affidavit because, despite what Culley attested ANFIC would have done had it known about the airplane, the record revealed that upon learning of the Beechcraft and later the Paraguay airplane,[1] ANFIC in fact had not amended Rose Acre's policy to provide a broader aircraft exclusion. The evidence established that ANFIC had not done so because it believed the existing exclusion excluded the Beechcraft, the position it continues to argue on appeal. Accordingly, the district court entered judgment for Rose Acre on the misrepresentation claim as well.
 
 II.
 Standard of Review
 
 6
 We review a district court's entry of summary judgment de novo, General Acc. Ins. Co. of America v. Gonzales, 86 F.3d 673, 675 (7th Cir.1996). Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that the record in this diversity case is controlled by Indiana law. Accordingly, Indiana law both "defines the issues of material fact and furnishes the rules of decision." Republic-Franklin Ins. Co. v. Silcox, 92 F.3d 602, 604 (7th Cir.1996). We recently addressed the appropriate standards for reviewing insurance policy claims under Indiana law:
 
 
 7
 If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. If there is an ambiguity, the policy should be interpreted most favorably to the insured. It should be construed to further the policy's basic purpose of indemnity.
 
 
 8
 Gonzales, 86 F.3d at 675 (quoting Tate v. Secura Ins., 587 N.E.2d 665, 668 (Ind.1992)) (internal citations omitted). Indiana's rules of construction favor indemnity, and thus the insured, "because the insurance policies are generally drafted by the insurance companies." Gonzales, 86 F.3d at 675 (citing Eli Lilly and Co. v. Home Ins. Co., 482 N.E.2d 467, 469 (Ind.1985)). With these general principles in mind, we turn to the language of the policy.
 
 Coverage Under the Policy
 
 9
 ANFIC describes its coverage in section I., appropriately titled "coverage":
 
 A. Insuring Agreement
 
 10
 1. We [ANFIC] will pay those sums in excess of "underlying insurance" or the retained limit that the "insured" becomes legally obligated to pay as damages because of "injury" caused by an "occurrence" to which this policy applies.
 
 
 11
 The insurance afforded by ANFIC's policy is insurance that "is excess over any other valid and collectible insurance," which is termed "other insurance." Policy at section IV.F.
 
 
 12
 By the terms of paragraph A.1., above, the policy will pay claims that exceed either the underlying insurance or the retained limit. Underlying insurance is "other insurance" but is more narrowly defined in section V.L. as liability insurance coverage listed in the "Schedule of Underlying Insurance," specifically, "only those policies shown in the Declarations or endorsed onto the policy." The policy defines retained limit in section III.C. as:
 
 
 13
 the amount of the damages you will pay when the "injury" is covered by the policy and not covered by "underlying insurance."
 
 
 14
 Thus, by the plain language of the policy, ANFIC will pay legal obligations in excess of either the "underlying insurance" or, if the obligation is not covered by underlying insurance, by the retained limit.
 
 
 15
 In Rose Acre's case, because no aircraft policies are listed in the declarations or endorsed onto the policy, by the terms of section V.L., no underlying insurance coverage for aircraft applies. And because no underlying insurance coverage applies, under section I.A.1. ANFIC agrees to pay those sums in excess of the retained limit. The retained limit in Rose Acre's policy was $10,000.
 
 Exclusions to Coverage
 
 16
 The extent of ANFIC's coverage is not defined solely by what is included, however. The policy also contains a number of exclusions set out in Section I.B. Of import to this case, because coverage hinges upon it, is exclusion 5(c):
 
 
 17
 5. This policy does not apply, except to the extent that coverage is available to the "Insured" in the "underlying insurance," to: ...
 
 
 18
 c. Injury arising out of the ownership, maintenance, operation, use, loading or unloading of an aircraft, if such aircraft is owned or hired without pilot or crew by or on behalf of the "Insured."
 
 
 19
 This exclusion limits ANFIC's coverage for certain liabilities that might arise in association with an aircraft. The exclusion itself contains an exception to the exclusion: "except to the extent that coverage is available to the insured in the 'underlying insurance.' " If coverage is available in the "underlying insurance," the exclusion is ineffective. As discussed above, in this case no "underlying insurance" exists with respect to aircraft. Thus the exception is not relevant to the exclusion and the exclusion controls the limits of ANFIC's coverage.
 
 Analysis
 
 20
 Both ANFIC and Rose Acre argue that exclusion 5(c) is unambiguous when it excludes coverage for injury "arising out of the ownership, maintenance, operation, use, loading or unloading of an aircraft, if such aircraft is owned or hired without pilot or crew by or on behalf of the 'Insured.' " But in spite of being "unambiguous," it has a different meaning for each of the parties. ANFIC argues it unambiguously excludes coverage for aircraft owned by the insured, or hired without crew or pilot on behalf of the insured. Rose Acre argues it unambiguously means owned without pilot or crew, or hired without pilot or crew, in each case by or on behalf of the insured.
 
 
 21
 At this point we recognize that it pays not to daydream in grade school English class. Rose Acres contends that "[a]s used in the policy, 'owned or hired' is a compound predicate (two verbs connected by 'or')." Rose Acre further argues that like any "prepositional adverb phrase,"[2] "without pilot or crew," modifies equally each verb of a compound predicate. For authority Rose Acre refers us to In re Graham, 239 Mo.App. 1036, 199 S.W.2d 68, 74-75 (1946) (superseded by statute on other grounds), which addressed a similar construction in an adoption statute by citing to Jones Practical English Composition p. 66 (3d Ed.1941). In Graham, the court was construing the statutory phrase, "[i]f he or she has wilfully abandoned the child or neglected to provide proper care and maintenance for the two years last preceding such date." In determining that the two-year requirement applied to "abandoned" as well as to "neglected," the court noted that "the word 'or' preceding the word 'neglect' is a disjunctive conjunction connecting two coordinate clauses of equal grammatical value." Graham, 199 S.W.2d at 74. In such a construction, the following qualifying phrase modifies the clause which precedes the conjunction as well as the clause following the conjunction. Id. See also State v. Thomas, 292 N.C. 251, 232 S.E.2d 411, 413-14 (1977) (Where statute prohibits "the unlawful and forcible opening, attempt to open, or picking of a safe or vault by the use of 'explosives, drills, or tools,' [the] three methods are described in an adverbial clause which clearly modifies each element of the compound predicate. Thus each method of opening a safe must be by means of 'explosives, drills, or tools' in order to fall within the prohibition of the statute."). So too, argues Rose Acre, in the airplane exclusion at issue here: "the prepositional adverb phrase 'without pilot or crew' modifies 'owned' and 'hired' equally." By way of example, Rose Acre provides us with a similarly structured sentence: "He could buy or lease the car without taking out a loan." "Without taking out a loan" modifies both buy and lease; "he" could do either without a loan.
 
 
 22
 ANFIC does not contest this grammatical construction nor does it contest that this construction renders the exclusion in Rose Acre's favor. Which is not to say that it concedes the point, either. Rather ANFIC argues that "commentators" have understood the exclusion to mean what ANFIC argues it means, and that courts have construed similar language in a manner consistent with ANFIC's construction.
 
 
 23
 ANFIC first argues that "[c]ommentators have stated that [ANFIC]'s umbrella policies exclude coverage for an insured's owned aircraft," citing Warren, McVeigh & Griffin, The Umbrella Book (1990) and 2 International Risk Management Institute, Inc., Commercial Liability Insurance (Dec.1988), two insurance industry publications. We do not so read these publications, or at least those pages submitted by ANFIC to the district court. Neither analyzes the language contained within ANFIC's policy. The Umbrella Book provides a checklist of purported coverage. It also discusses the importance of phrasing umbrella coverage for aircraft carefully and provides an analysis of two aircraft exclusions that are entirely different than the one issued to Rose Acre by ANFIC. The other publication relied upon by ANFIC presents only a checklist which we assume purports to represent what is and what is not covered by ANFIC's standard policy and exclusions. Even if these publications said what ANFIC suggests they say, they would constitute hearsay; we have no way of knowing how either arrived at its representations concerning ANFIC's aircraft exclusion, or whether they are just repeating what ANFIC itself has reported its policies cover.
 
 
 24
 ANFIC also relies upon Hartford Fire Insurance Company v. Superior Court, 142 Cal.App.3d 406, 191 Cal.Rptr. 37 (1983), which analyzed an aircraft exclusion purportedly "virtually identical" to that issued to Rose Acre. However, the policy in Hartford excluded coverage for "any aircraft owned or operated by the insured or chartered without crew by or on behalf of the insured." Id. 191 Cal.Rptr. at 40. This language is not only not identical, it is significantly different than that in ANFIC's policy. The insertion of "by the insured" following "owned and operated" cuts out and modifies those two terms separately so that "without crew by or on behalf of the insured" modifies only "chartered." The construction in Hartford actually supports Rose Acre's construction of ANFIC's policy. In Hartford's policy, "by the insured" modifies both "owned" and "operated," just as Rose Acre argues "without pilot or crew" modifies both "owned" or "hired" in the ANFIC policy. Had ANFIC intended to construct its policy as Hartford did, it would have stated "if such aircraft is owned by the insured or hired without pilot or crew by or on behalf of the insured." But that is not what ANFIC wrote and Hartford helps them not.
 
 
 25
 What would help ANFIC is the insertion of a comma after "owned." As the court noted in Graham, "[t]he general rule is that when a conjunction connects two coordinate clauses or phrases, a comma should precede the conjunction if it is intended to prevent following qualifying phrases from modifying the phrase which precedes the conjunction." 199 S.W.2d at 74. The same holds true for ANFIC's policy where the comma would prevent the adverbial phrase "without pilot or crew" from modifying both terms in the compound predicate. However, when construing an insurance contract, we may not rewrite unambiguous policy language. General Cas. of Wisconsin v. Diversified Painting Service, Inc., 603 N.E.2d 1389, 1390 (Ind.App.Ct.1992). So the comma stays out.
 
 
 26
 Given ANFIC's lack of support for its "unambiguous" construction of the policy, we think Rose Acre presents the more powerful argument on the technical construction of the exclusion. But we need not rest on a technical grammatical construction of the exclusion in ruling in favor of Rose Acre, because under Indiana law "[a] condition or exclusion in an insurance contract ... must clearly and unmistakingly bring within its scope the particular act or omission that will bring the condition or exclusion into play. Coverage will not be excluded or destroyed by an exclusion or condition unless such clarity exists." Sur v. Glidden-Durkee, 681 F.2d 490, 496-97 (7th Cir.1982) (quoting Huntington Mut. Ins. Co. v. Walker, 181 Ind.App. 618, 392 N.E.2d 1182, 1185 (1979) (internal citations omitted)). As set out in the policy ANFIC issued to Rose Acre, the aircraft exclusion was neither clear nor unmistakable. Indiana would thus have us construe the policy in favor of coverage. Id.
 
 
 27
 Alternatively, both parties argue that the exclusion is ambiguous. Rose Acre argues this because Indiana construes ambiguities in an exclusion in favor of coverage. ANFIC argues this because it wishes to introduce extrinsic evidence that it had told Rose Acre that the policy did not provide coverage for the Beechcraft.
 
 
 28
 The fact that ANFIC and Rose Acre disagree on the proper construction of the aircraft exclusion does not in itself constitute an ambiguity. General Cas. of Wisconsin, 603 N.E.2d at 1390. Rather, ambiguity arises where the policy "is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning." Id. Under Indiana law, when an ambiguity is patent, meaning it arises from within the document itself and cannot be resolved by reference to the document, the court may not consider extrinsic evidence in resolving the ambiguity. Ohio Cas. Group of Ins. Co. v. Gray, 746 F.2d 381, 383 (7th Cir.1984) (citing Graham v. Anderson, 454 N.E.2d 870, 872 (Ind.App.Ct.1983)). If the ambiguity is latent, meaning the terms of the policy are unambiguous but cannot be applied to the situation in question, "because they do not fit the factual circumstances to which they are addressed," then the court may resort to extrinsic evidence in order to determine how the parties would have understood the agreement to apply to the situation in question. Ohio Cas., 746 F.2d at 383; Amoco Oil Co. v. Ashcraft, 791 F.2d 519, 521 (7th Cir.1986) (applying Indiana law). In this case, the district court determined that because the two sides presented opposite interpretations of the disputed language and because each interpretation was reasonable, the language must be ambiguous. Here, to the extent the sentence is ambiguous, the ambiguity can arise only within the exclusion itself. The failure to insert a comma or to restructure the sentence creates an inherent, and thus patent, ambiguity, no matter what factual situation underlies the dispute over coverage. The exclusion itself is confusing. These facts do not present a puzzling application of what would otherwise be clear; rather the exclusion itself is unclear on what is and is not excluded from coverage. Accordingly we may not consider extrinsic evidence in construing the ambiguity. Instead, we must construe an ambiguous insurance contract applying Indiana's general rules in favor of coverage. Eli Lilly, 482 N.E.2d at 470; Asbury v. Indiana Union Mut. Ins. Co., 441 N.E.2d 232, 236 (Ind.App.Ct.1982). Specifically, an ambiguous exclusion in an insurance contract is to be interpreted so as to disregard the exclusion. Sur, 681 F.2d at 496-97 (citing Huntington Mut. Ins. Co. v. Walker, 181 Ind.App. 618, 392 N.E.2d 1182, 1185 (1979)); Evans v. National Life Acc. Ins. Co., 467 N.E.2d 1216, 1219 (Ind.App.Ct.1984). Even if the language were ambiguous, it would merely reinforce our earlier determination that ANFIC failed to meet its burden of clearly and unmistakingly articulating in exclusion 5(c) what exactly was excluded from coverage. See infra at p. 457; Sur, 681 F.2d at 496-97. Applying these rules of construction, we must disregard the aircraft exclusion and construe the policy as providing coverage.
 
 Material Misrepresentation
 
 29
 ANFIC also claims that Rose Acre is not entitled to coverage for the Beechcraft crash because it materially misstated a fact in applying for insurance. A material misrepresentation in an insurance contract renders the policy voidable. American Family Mut. Ins. Co. v. Kivela, 408 N.E.2d 805, 810 (Ind.App.Ct.1980). Under Indiana law, a misrepresentation is material if the fact misrepresented, had it been known to the insurer, would have "reasonably enter[ed] into and influence[d] the insurer's decision whether to issue the policy or to charge a higher premium." Id. ANFIC claims that Rose Acre's failure to include ownership of the Paraguay airplane in its application for insurance constituted a material misrepresentation causing ANFIC to issue a policy different than it would have had it known of the aircraft.
 
 
 30
 In support of this argument, ANFIC cites to Culley's deposition in which he stated that had he known of the airplane, he would have excluded coverage for all aircraft operations. Normally, that might be enough to find in favor of ANFIC. However, in this case there is other evidence, less speculative, which demonstrates not what ANFIC might have done had it known of the aircraft, but rather what it actually did once it learned of the aircraft. It did nothing. ANFIC thought the policy already excluded any aircraft owned by Rose Acre. That is what it determined when it rejected Culley's addition of a total aircraft exclusion following the Beechcraft crash. That is what it determined when it still did not add a total aircraft exclusion after it learned of the Paraguay plane. Indeed, that is what it continues to argue on appeal. When presented with opportunities to change the aircraft coverage, both after the Beechcraft accident as well as later upon discovery of the Paraguay airplane, ANFIC did not modify the exclusion because it believed there was no need to do so. Faced with an inconsistency between what ANFIC actually did and self-serving testimony speculating on what it might have done, the district court correctly determined there was no genuine material issue in dispute. See id. (materiality of misrepresentation normally a factual question unless the evidence is such that there can be no reasonable difference of opinion).
 
 III. Conclusion
 
 31
 ANFIC issued an insurance policy to Rose Acre which it has maintained clearly excluded coverage for the Beechcraft at issue in this case. Because that exclusion is not at all clear, and in fact may be patently ambiguous, we must hold that ANFIC failed to "clearly and unmistakingly" exclude such aircraft as it must if it wishes to prevail under Indiana rules of insurance contract construction. Having both argued and introduced evidence that it believed that the language unambiguously excluded the Beechcraft, and in fact that it declined to amend the exclusion when it had the opportunity to do so because it believed the aircraft already was excluded, ANFIC cannot meet its burden of showing that the misrepresentation about the Paraguay airplane would have materially affected the policy it issued.
 
 
 32
 Accordingly, we affirm the district court's entry of summary judgment for Rose Acre.
 
 
 
 [1]
 After ANFIC learned of the Paraguay airplane it still did not add a total aircraft exclusion. Instead it excluded all aircraft located outside the continental United States and Canada
 
 
 [2]
 William A. Sabin, The Gregg Reference Manual 475 (7th ed. 1992) defines an "adverbial phrase" as "[a] phrase that functions as an adverb (such as ... a prepositional phrase)." A prepositional phrase is composed of "[a] preposition and its object and modifiers [and] may be used as a noun, an adjective, or an adverb." Id. at 476. By characterizing "without pilot or crew" as a "prepositional adverb phrase," Rose Acre appears to be describing a prepositional phrase that is performing the role of an adverb and which is thus, also, an adverbial phrase