Robert H. AWBREY and Teri
M. (McPherson) Awbrey,
Plaintiffs,

v.

UNITED STATES of America, Defendant
and Third Party Plaintiff,

v.

UNITED FARM BUREAU MUTUAL
INSURANCE COMPANY, Third
Party Defendant.

STATE FARM INSURANCE as subrogee
of Teri McPherson, Plaintiff,

v.

UNITED STATES of America, Defendant
and Third Party Plaintiff,

v.

UNITED FARM BUREAU MUTUAL
INSURANCE COMPANY, Third
Party Defendant.

Nos. NA 96–29–C H/S, NA 96–64–C H/S.

United States District Court,
S.D. Indiana,
New Albany Division.

March 28, 1997.

Nick J. Herthel, Bedford, for plaintiffs Robert H. Awbrey and Teri M. (McPherson) Awbrey (In No. NA 96–29–C H/S).

William J. Beggs, Bunger & Robertson, Bloomington, for subrogee/plaintiff State Farm Insurance (In No. NA 96–64–C H/S).

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, for defendant and third–party plaintiff U.S. (In Nos. NA 96–29–C H/S and NA 96–64–C H/S.)

James E. Bourne, Wyatt, Tarrant & Combs, New Albany, for third–party defendant United Farm Bureau Mutual Insurance Company (In Nos. NA 96–29–C H/S and NA 96–64–C H/S.)

## ENTRY ON CROSS–MOTIONS FOR SUMMARY JUDGMENT ON THIRD–PARTY COMPLAINT

HAMILTON, District Judge.

These consolidated cases present an issue of first impression in Indiana relevant to the personal automobile insurance policies of federal employees. In these cases an employee of the United States Postal Service was driving her own vehicle and was acting within the scope of her federal employment when she was involved in an automobile accident. After the employee was sued for negligence, the Attorney General certified that she had been acting within the scope of her employment and the United States was substituted as the sole defendant. See 28 U.S.C. § 2679(b)(1) & (d). The employee's personal automobile liability insurance policy treats as an insured "any other person or organization liable for the use of the owned automobile" by one of the insureds. The policy also excludes coverage for "any damages for which the United States might be liable for the insured's use of any vehicle."

The issue here is whether that exclusion applies to exclude coverage in a case where all parties agree that the United States is liable for any negligent or wrongful conduct on the part of the employee. Although the exclusion might well be ambiguous as applied to other circumstances, the exclusion clearly applies to this case and should be enforced.

The court therefore denies the United States' motion for summary judgment and grants the third-party defendant insurer's motion for summary judgment.

## Summary Judgment Standard

Summary judgment is appropriate if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Viewing the evidence in the light most favorable to the non-moving party, the court must determine whether there is evidence upon which a reasonable jury could find for that party. *Sybron Transition Corp. v. Security Ins. Co. of Hartford,* 107 F.3d 1250, 1254–55 (7th Cir.1997). Interpretation of a written contract such as a contract of insurance is ordinarily a question of law that is often suitable for resolution on a motion for summary judgment. See *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992); *Erie Ins. Group v. Alliance Envtl., Inc.,* 921 F.Supp. 537, 539 (S.D.Ind.1996), *aff'd,* 102 F.3d 889 (7th Cir.1996).

## Facts

The material facts of this case are not in dispute for purposes of the parties' cross-motions for summary judgment on the insurance coverage issues. On February 16, 1995, Dixie S. Bell, an employee of the United States Postal Service, was involved in an automobile accident with Teri M. Awbrey (then Teri McPherson) at the intersection of Fairview Church Road and County Road 950 East in Lawrence County, Indiana. Ms. Bell and her husband Gordon Bell owned the vehicle. Ms. Bell was acting within the scope of her employment with the Postal Service at the time of the accident. The Bells had an insurance policy issued by United Farm Bureau Mutual Insurance Company ("UFB"), which covers automobile accidents and which was in effect at all times relevant in this case.

The UFB policy provides that UFB "will pay damages for which an insured is legally liable because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of an owned or non-owned automobile." UFB Br., Ex. A at 5. The policy also provides that UFB has "the right and duty to defend any suit asking for these damages." *Id.* The policy defines an "insured" to include "any other person or organization liable for the use of the owned automobile or trailer by one of the above insureds." *Id.* The United States contends, and UFB has not argued to the contrary, that the United States is an "insured" within the meaning of the policy.

The policy provision at the heart of the controversy here lists exclusions from coverage. It provides in relevant part:

EXCLUSIONS—What we will not cover.

This insurance does not apply to:

\* \* \*

17. Any damages for which the United States might be liable for the insured's use of any vehicle.

*Id.* at 6–7.

On January 24, 1996, State Farm Insurance, as subrogee of Ms. Awbrey, filed suit against Ms. Bell in the Monroe Circuit Court. The United States removed the suit to this court as Cause No. IP 96–266–C, and was substituted as the sole defendant in the action.[1] On March 15, 1996, Robert H. Awbrey and Terry M. Awbrey filed suit in federal court against Ms. Bell and the United States

---

**1.** The Federal Tort Claims Act is the sole remedy for actions against the United States for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 2679(b)(1). Section 2679(d)(2) provides:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(2).

in Cause No. NA 96–29–C. The United States was again substituted as the sole defendant in the action. Upon motion of the United States, the two actions were consolidated and transferred to the New Albany Division, and the State Farm action was redesignated as Cause No. NA 96–64–C. The United States then filed a third-party complaint against UFB alleging that UFB had the duty to defend and indemnify the United States in the consolidated action under the insurance policy issued by UFB to Ms. Bell. Both UFB and the United States have moved for summary judgment on the coverage issue.

### The Merits

■ Because the United States falls within the UFB policy's definition of an "insured," the United States is entitled to defense and indemnification by UFB unless the exclusion applies to bar coverage here. The United States has admitted that Ms. Bell was acting within the scope of her federal employment at the time of the accident. Under the Federal Tort Claims Act, then, the United States has admitted that it is liable for any damages for which Ms. Bell could be held liable as a result of her use of the vehicle at that time.[2] UFB argues that since the United States is liable for any negligent or other wrongful use of the vehicle by Ms. Bell, the United States is expressly excluded from coverage under the exclusion for "any damages for which the United States might be liable for the insured's use of any vehicle." The United States argues that the exclusion is ambiguous, "overly comprehensive" in scope, and against public policy.

### A. Ambiguity of the Policy Exclusion

■ The parties agree that Indiana law governs the interpretation of the insurance policy. Under Indiana law, insurance contracts are generally subject to the same rules of interpretation as are other contracts. *Eli Lilly and Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). The policy language

should be given its plain and ordinary meaning if the language is clear and unambiguous. *Id.* An insurance policy is ambiguous "if reasonable persons may honestly differ as to the meaning of the policy language." *Id.* If the language is ambiguous, the policy should be interpreted most favorably to the insured. *Tate*, 587 N.E.2d at 668. The interpretation of an insurance policy, including the determination of whether an ambiguity exists, is ordinarily a question of law for the court. See *id.* ("It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact finder must determine the facts upon which the contract rests."); *Marlatt v. United Farm Bur. Family Life Ins. Co.*, 640 N.E.2d 1073, 1077 (Ind.App.1994) ("construction of a written contract is a question of law for which summary judgment is particularly appropriate").

The United States asserts that the exclusion is ambiguous as a matter of law. It bases its argument primarily on three district court decisions construing identical exclusion provisions. See *Lentz v. United States*, 921 F.Supp. 628 (N.D.Iowa 1996); *Comes v. United States*, 918 F.Supp. 382 (M.D.Ga.1996); *Ogima v. Rodriguez*, 799 F.Supp. 626 (M.D.La.1992). The identical language was also addressed in *Mroz v. United States*, No. 93–411–WLB, 1994 WL 901498 (S.D.Ill. July 22, 1994). All of these decisions held that the exclusion was ambiguous and ineffective to release the insurer from a duty to defend and indemnify the United States under the policy. This court respectfully disagrees with these decisions where, as here, it is undisputed that the federal employee was acting within the scope of her employment at the time of the accident. The exclusion may be ambiguous under other circumstances, but where it is established that the United States will be liable for any damages resulting from the employee's negligent or wrongful conduct, the exclusion would apply under all reasonable interpretations of the language. That result has the effect of excluding coverage in situations

---

**2.** The United States has pointed out that the Attorney General's certification is not necessarily binding on the courts or on plaintiffs. See, *e.g.*, *Seiden v. United States*, 537 F.2d 867, 870 (6th Cir.1976); *Daugherty v. United States*, 427

F.Supp. 222, 224 (W.D.Pa.1977). In this case, however, there simply is no dispute as to whether Ms. Bell was acting within the scope of her employment.

in which the person paying the policy premium has no *need* for insurance. Under federal law, the United States is the only proper defendant, and it is quite sensible for insurers and their customers who pay premiums not to contract for unnecessary coverage.

*Ogima* arose on facts virtually identical to those in this case. There, a mail carrier was driving her own vehicle and was acting within the scope of her federal employment when she was involved in a car accident with plaintiff Louise Ogima. In terms virtually identical to those found in the UFB policy here, the mail carrier's personal automobile insurance policy included both her and the United States in the definition of "insured." The policy also contained an exclusion for "damages for which the United States might be liable for the insured's use of any vehicle." 799 F.Supp. at 629 The court found that "the exclusion is vague, ambiguous and too comprehensive in scope" under Louisiana law because it failed to identify the insured or insureds intended to be excluded from coverage. *Id.* at 630. The court concluded that to "allow an insurer to pick and choose when there might be coverage afforded or denied depending on the facts is inconsistent with Louisiana law. The terms of the exclusion should be such that it is clear who is insured and what is excluded." *Id.* at 631.

The other cases interpreting policy language virtually identical to that found here have relied primarily on the holding and reasoning in *Ogima.* In *Mroz,* Judge Beatty agreed with the holding in *Ogima* that the exclusion was vague, ambiguous and too comprehensive. 1994 WL 901498, at *1. He explained:

> The terms of the exclusion appear to include situations other than when the United States is liable for the negligence of its employees. Also, this exclusion could be construed as eliminating the duty to defend an action brought under 28 U.S.C. § 2679, because the liability of the employee has not been proven.

*Id.* In *Comes,* a case arising under Georgia law, the court determined that the "holding of *Ogima* is directly applicable to the present case and is persuasive authority" because "Georgia caselaw follows the same guiding principles as the Louisiana cases ... in requiring clear exclusionary language and resolving any doubt against the insurer." 918 F.Supp. at 386. The court added that because the insurer in *Comes* was also the insurer in *Ogima,* the *Ogima* holding should have put it on notice that its exclusionary language was ambiguous. In *Lentz,* a case arising under Iowa law, the court followed *Ogima* and *Mroz* and concluded that the exclusion was "too ambiguous, vague and comprehensive to be given effect." 921 F.Supp. at 631 (citations omitted).

This court agrees that there are factual scenarios in which reasonable persons may honestly differ as to the meaning of the language in the exclusion. In that sense, the exclusion is "ambiguous." See *Allstate Ins. Co. v. Brown,* 16 F.3d 222, 225 (7th Cir.1994) (applying Indiana law, an insurance policy exclusion is "ambiguous" if it "is susceptible to more than one reasonable interpretation"). The ambiguity, as the United States argues, arises not from any extrinsic facts but from the use of the phrase "might be liable." Since this ambiguity arises from the language of the contract itself, it is a "patent" ambiguity, and the contract's construction is purely a question of law to be determined by the court. *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.,* 559 N.E.2d 600, 604 (Ind. 1990); *American Nat'l Fire Ins. Co. v. Rose Acre Farms, Inc.,* 107 F.3d 451, 457–58 (7th Cir.1997) (distinguishing "patent" ambiguities from "latent" ambiguities and explaining that a court must resolve patent ambiguities without considering extrinsic evidence).

Two principal interpretations of the phrase "might be liable" would be reasonable readings of the language. First, the phrase could be interpreted as broadly as the United States suggests, so as to apply any time there is a chance, however remote, that the United States might ultimately be found liable for the damages being sought. According to this broad interpretation, the use of "might be" would exclude coverage both where there is a dispute as to whether a federal employee is at fault on the merits in the accident and where there is a dispute as to whether the United States is liable *if* the employee was at fault (*e.g.,* where there is a

dispute as to whether the employee was acting within the scope of his or her federal employment). This broad interpretation would also exclude coverage where a plaintiff seeks to impose some form of vicarious liability on the employee's family members or others.[3]

■ Second, the phrase "might be liable" could be interpreted more narrowly to exclude coverage only where the United States would certainly be liable for damages *if* the employee was at fault. Under this interpretation, the use of the phrase "might be" would only make clear that the question of coverage could be decided without deciding the merits of the underlying case—*i.e.*, whether the federal employee was at fault in an accident. Under this narrow interpretation, the exclusion would apply so long as the employee was acting within the scope of her federal employment and the FTCA applied to protect the employee from personal liability. Under this narrow interpretation, coverage would be excluded only in situations where the United States is the *only* "insured" that is potentially liable.

Although the phrasing of the exclusion can support both interpretations (and some slight variations), the narrow interpretation is more consistent with the obvious purposes of the policy and with the policy language as a whole. The narrow interpretation means that coverage is excluded only where the policy owner has no need for defense and indemnification by the insurer—where federal law provides, and all parties agree, that the United States is the only proper defendant. Under the narrow interpretation, the exclusion protects the insurer's customer without having the customer pay for coverage that could benefit only the United States, which is a stranger to the insurance contract. In addition, the policy's definition of "insured" includes a "person or organization [such as the United States] liable for the use of the owned automobile or trailer by one of the above insureds." Under the clear language of this definition, even to qualify as an "insured" the United States would have to *be liable* for Ms. Bell's use of the vehicle. The

exclusion states that insurance does not apply to "damages for which the United States might be liable for the insured's use of any vehicle." Since the United States must actually *be liable* in order to be an "insured," the broad interpretation of "might be liable" would include situations where the United States is not an "insured" at all. The narrow interpretation would include only those situations where the United States is an insured (because it *is* liable), but where it only "might be liable" on the merits of the underlying claim because the employee "might be," but also might not be, at fault.

■ Nevertheless, the existence of two different plausible interpretations of an exclusion means the exclusion is ambiguous, and Indiana law requires that ambiguities in exclusions in insurance policies be resolved in favor of coverage and against the drafter. *Rose Acre Farms,* 107 F.3d at 457–58 (applying interpretation of ambiguous exclusion to favor coverage); *American States Ins. Co. v. Kiger,* 662 N.E.2d 945, 948–49 (Ind.1996) (same). From these premises, the United States contends the policy exclusion is ineffective and must be ignored. The court agrees with the two premises but disagrees with the conclusion. The rule that ambiguous language is to be liberally construed in favor of the insured means that where there is one reasonable interpretation that would favor the insured and one that would favor the insurer, the court must adopt the construction that would favor the insured. See, *e.g., Eli Lilly and Co.,* 482 N.E.2d at 470 ("The terms of an insurance policy should be interpreted most favorable to the insured if there is an ambiguity in the policy."); *Huntington Mut. Ins. Co. v. Walker,* 181 Ind.App. 618, 392 N.E.2d 1182, 1185 (1979) (stating that it is "well-settled that where the language of an insurance contract is so ambiguous as to be susceptible of more than one interpretation, the court will adopt the construction most favorable to the insured").

■ The problem here is that the United States has not offered a reasonable interpretation (or any interpretation) of the ambigu-

---

**3.** That was the situation in *State Farm Auto. Ins. Co. v. Malcolm,* 259 N.W.2d 833, 837–38 (Iowa 1977), where the court held the exclusion could not be enforced.

ous exclusion that would avoid its application *in this case,* where it is clear that the United States will be liable for any negligence on the part of its employee. Ambiguous language must be liberally construed in favor of the insured, but it does not follow that the ambiguous provisions are treated as if they do not exist. An exclusion is effective if it "clearly and unmistakably" brings within its scope the act or omission that will bring the exclusion into play. *Rose Acre Farms,* 107 F.3d at 457–58; *Walker,* 392 N.E.2d at 1185. The phrase "damages for which the United States might be liable for the insured's use of any vehicle" clearly brings within its scope the situation here—an accident with an employee using a vehicle while acting within the scope of employment with the United States.

■ The court's decision is a narrow one. It is based on the absence of any dispute as to whether the United States will be liable for any damages shown to have been caused by its employee's negligent or wrongful conduct. As a practical matter, the exclusion will be effective only where the United States—and not the employee—is the sole defendant. The court recognizes that in a variety of other factual situations, the exclusion in the UFB policy would be subject to alternative reasonable interpretations such that the exclusion would not clearly bring the conduct at issue within its scope. That is not this case.[4]

## B. The Public Policy Arguments

■ The United States next argues that the exclusion is overly comprehensive in scope, contrary to public policy, and thus invalid. Generally, an insurance company may limit its liability in any manner not inconsistent with public policy. *Lexington Ins. Co. v. American Healthcare Providers,* 621 N.E.2d 332, 338 (Ind.App.1993). An unambiguous exclusionary clause, then, is generally entitled to enforcement. *Id.* "Absent contrary legislation, there is usually no public policy which prevents parties from contract-

ing as they see fit." *Id.* Courts will declare a contract void as contravening public policy only in cases that are "substantially free from doubt." *Id.* This is not such a case.

■ The United States argues that the exclusion in the UFB policy essentially operates to exclude federal employees and family members "under any and all circumstances where it is *possible* that the United States *might* be liable for the insured's use of any vehicle, even if the United States might not be liable. So long as the insured is a federal employee, it is almost literally possible that any time the insured drives his vehicle, the United States 'might' be liable, and thus coverage is unavailable." U.S. Br. at 20–21 (emphasis in original). This broad exclusion, according to the United States, contravenes Indiana law requiring all drivers to have liability insurance. *Id.* at 21, citing Ind.Code § 9–25–4–1 *et seq.*

As shown above, even apart from the rule that requires construing ambiguous language in favor of the insured, the better interpretation of this exclusion is that it applies only where it is undisputed that the federal employee was acting within the scope of her employment so that the United States is the only proper defendant. In any event, an Indiana court would give this ambiguous exclusion a narrow interpretation more favorable to the insured. Properly interpreted, then, the exclusion is certainly not so broad as to violate public policy. The exclusion "clearly and unmistakably" excludes coverage only where it is undisputed that the United States will be liable for damages *if* the federal employee is found to be at fault. The exclusion applies where the only remaining defendant in a case is the United States and the employee therefore does not need private insurance. Where there are disputed issues of fact or law as to whether the United States is legally responsible for an employee's act or omission, UFB may not refuse to defend any "insured" as defined in the policy. Since the only situation "clearly and unmistakably" within the scope of the exclusion is

---

4. The court assumes that an exclusion could be drafted so poorly as to be virtually incoherent, leaving insureds and courts to guess its meaning. An exclusion drafted that badly could be disregarded, but this exclusion is subject to a reason-

able and narrow interpretation. See *Kiger,* 662 N.E.2d at 948–49 (giving ambiguous exclusion the narrower interpretation that favored the insured).

one where the United States is responsible for its employee's use of a vehicle, the exclusion will not leave the insured bereft of indemnification and defense. Either the insurer or the United States (and sometimes both) will be on the hook for both defense and indemnification.[5]

The United States does not articulate any other public policy that would render the exclusion invalid, and the court sees none. The chief concern in interpreting any exclusion in a liability policy is that there will be situations where the insured unexpectedly and unreasonably finds herself defended and/or indemnified by no one. Properly construed, the exclusion here does not lead to that result. Rather, the exclusion merely relieves UFB from having to defend or indemnify the United States, which is not a party to the insurance contract, in situations where the United States is the only potentially liable defendant. That result does not violate public policy.

### Conclusion

The exclusion at issue here could have been drafted more clearly, see *Ogima*, 799 F.Supp. at 630–31 (citing examples), and in some contexts, the exclusion is susceptible to one interpretation that would require UFB to defend and indemnify its insureds and another interpretation that would relieve UFB of those duties. In that sense, the exclusion is ambiguous. But under the undisputed facts of this case, the exclusion clearly and unmistakably relieves UFB from a duty to defend and indemnify the United States here. The United States' motion for summary judgment is DENIED and United Farm Bureau Mutual Insurance Company's motion for summary judgment is GRANTED. UFB has no contractual obligation under its policy to defend or indemnify the United States for the claims asserted against it arising from the February 16, 1995, automobile accident involving cars operated by Dixie Bell and by Teri M. (McPherson) Awbrey.

So ordered.

---

**5.** Indiana law recognizes that exclusions can be written so broadly as to render coverage "illusory." Indiana courts treat such "illusory" policies as contrary to public policy and enforce the insured's reasonable expectations of coverage. However, it is difficult to meet the high threshold for showing illusory coverage. See generally *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F.Supp. 694, 699, 701–02 (S.D.Ind.1996) (where insured was a tavern, exclusion of liability for all losses "arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages" rendered coverage illusory). The exclusion in this case does not, under any interpretation, leave the insured with only "illusory" coverage.