**INDIANA HARBOR COKE COMPANY, et al. Plaintiff–Appellees,**

v.

**HARTFORD STEAM BOILER INSPECTION AND INSURANCE CO., Defendant–Appellant.**

Nos. 02–6096, 02–6162.

United States Court of Appeals, Sixth Circuit.

Aug. 10, 2004.

Dan D. Rhea, Arnett, Draper & Hagood, Knoxville, TN, Henry R. Daar, Daar & Vanek, Chicago, IL, for Plaintiff–Appellees.

Michael K. Atkins, Baker, McReynolds, O'Kane & Atkins, Knoxville, TN, Edward W. Gleason, Keegan, Laterza, Lofgren & Gleason, Chicago, IL, Patrick E. Shipstead, Robins, Kaplan, Miller & Ciresi, Santa Ana, CA, for Defendant–Appellant.

Before DAUGHTREY and CLAY, Circuit Judges; and McCALLA, District Judge.*

## OPINION

McCALLA, District Judge.

In this insurance contract matter, both the plaintiff, Indiana Harbor Coke Company ("Indiana Harbor"), and the defendant, Hartford Steam Boiler Inspection and Insurance Company ("Hartford Steam Boiler"), appeal from adverse rulings entered by the district court. For the reasons set forth below, we affirm the final judgment of the district court in favor of the defendant insurer.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In granting partial summary judgment to Hartford Steam Boiler, the district court expertly summarized the factual background of this dispute. In its "Memorandum Opinion", the court stated:

Indiana Harbor manufactures blast furnace coke at its facility in East Chicago, Indiana which is used in the steel manufacturing process. The facility was engineered, procured and constructed by Raytheon Engineers & Constructors, Inc. ("Raytheon"). Construction began in January 1997 and was completed in March 1998 at which point the coke making operations commenced.

The facility has four batteries of 67 coke ovens. Each oven has four main components, the coking chamber, the oven walls, the sole flues, and the common tunnel and vent stacks. Coal which has been blended and crushed is delivered to the batteries in rail cars and is then pushed into the hot coking cham-

ber. The coal absorbs the heat from the refractory brick, which drives off volatile matter as gas and vapors, forming the coke. Air introduced from dampers in the roof of the chamber to the hot bricks ignites the coal blend. The gases are drawn into the sole flues which are located beneath the oven floor. Fully combusted flue gas leaves the sole flues by uptakes which then deliver the gas into a duct connecting all the ovens in the battery. The duct is known as the common tunnel and is located on top of the ovens running parallel to the length of the battery. The gas is pulled from the ovens toward steam generators by draft created by stacks on top of the coke oven battery. Draft is also induced by draft fans. The steam generators generate electric power.

The coke process operates in temperatures ranging from 2000 to 2700 degrees Fahrenheit. Temperature control is obtained by providing the proper amount of air for the fuel supplied by the coal bed. The goal is to add enough air to completely burn the fuel with an excess amount to cool the flue gas below 2700 degrees Fahrenheit. Without the excess air, the flue gas temperatures may exceed the maximum allowable for the refractory brickwork. Air is supplied to the coke ovens by draft which permits outside air to be drawn through the dampers in the roof and sole flues of each oven. If the draft is insufficient, the correct amount of air cannot be drawn through the dampers and unacceptable temperatures can result. Draft is measured in the common tunnel, and the contract technical specifications called for normal and desired oven flows of–0.4" of water column ("wc") on all the

---

* The Hon. Jon P. McCalla, United States District Judge for the Western District of Tennes-

see, sitting by designation.

ovens after charging of the coal. This level was never achieved consistently throughout the system prior to the refractory failure at issue in this case.

When representatives of Hartford Steam visited the facility to perform an underwriting survey and risk evaluation, construction was still underway. The representatives interviewed construction and plant personnel and familiarized themselves with the [planned] operation of the facility. After negotiations, Hartford Steam bound coverage on or about February 6, 1998; coverage became effective February 12, 1998; and the policy was prepared and issued on March 19, 1998. The policy is an "all risk" policy with a number of exclusions. The two exclusions at issue are the "increase in hazard" exclusion and the "refractory exclusion."

> The policy provides in pertinent part:

> This Policy insures against all risks of direct physical loss or damage to Property Insured from perils not otherwise excluded, subject to the terms and conditions of this Policy.

The increase in hazard exclusion provides:

> This Policy does not insure loss or damage caused by or resulting from:

> 7. any increase in hazard by any means within the knowledge and control of the Insured.

The refractory exclusion was added to Part ii of the Perils Excluded portion of the policy by an endorsement and states:

> This Policy does not insure against:
> . . .

> collapse of and/or failure of any refractory and/or refractory linings, unless such damage results directly from other physical damage not otherwise excluded by this policy.

In late March 1998, Indiana Harbor began coke-making operations and tested the amount of draft in the common tunnel system. The testing revealed that the draft was continuously below the technical specification. Indiana Harbor continued to operate the ovens and ramped to full production levels. Because the draft was less than the design specification called for, the temperatures in the ovens could not be properly controlled, and the refractory brick melted resulting in holes in the brickwork. The lower than specified draft was the result of the common tunnel being undersized. On September 4, 1998, Indiana Harbor discovered holes in the floors of 55 ovens. The refractory in approximately 55 sole flues had failed and needed to be repaired. A process called silica welding was used to fill the refractory holes, and Indiana Harbor submitted a claim for the cost of this repair work which was denied based on the exclusions set out above.

(Footnote omitted.)

Indiana Harbor then filed this action in federal district court based upon the complete diversity of the parties and the fact that the amount in controversy—approximately $1,500,000—exceeded the $75,000 jurisdictional threshold. After a period of discovery, both Indiana Harbor and Harford Steam Boiler filed motions for summary judgment in their favor. The district court applying Indiana insurance contract law, determined that the contractual language did not entitle Indiana Harbor to indemnification from Hartford Steam Boiler. Both parties appeal different elements of this decision.

Specifically, Indiana Harbor contends that the district court erred in holding that the defendant was not, as a matter of law, contractually obligated to indemnify the plaintiff for repairs to its coke ovens. Ad-

ditionally, Indiana Harbor maintains that the district court erred in not finding Hartford Steam Boiler liable for bad faith damages for its failure to provide the requested insurance coverage. In spite of the district court's decision in its favor, Hartford Steam Boiler also challenges portions of the district court's determination. First, Hartford Steam Boiler argues that the district court erred when it failed to apply the contractual "increase-in-hazard" exclusion as an alternative ground for denying insurance coverage to plaintiff. Second, Hartford Steam Boiler disputes the district court's decision to strike certain exhibits and portions of the affidavit accompanying the exhibits. We consider each of the parties' challenges in turn.

## II. STANDARDS OF REVIEW

We review de novo the grant of summary judgment by a district court. *See Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1048 (6th Cir.2001), *cert. denied,* 537 U.S. 813, 123 S.Ct. 73, 154 L.Ed.2d 15 (2002). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists unless, viewing the evidence in the light most favorable to the non-moving party, "a reasonable jury could return a verdict for [that] party." *Preferred Props., Inc. v. Indian River Estates, Inc.,* 276 F.3d 790, 801 (6th Cir.), *cert. denied,* 536 U.S. 959, 122 S.Ct. 2663, 153 L.Ed.2d 838 (2002) (quoting *Cockrel,* 270 F.3d at 1048).

This court reviews a challenge to the admissibility of evidence only for an abuse of discretion. *See Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716 (6th Cir.

1999) (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Tech. Safety Sys., Inc. v. Depinet,* 11 F.3d 641, 647 (6th Cir.1993).

## III. APPLICATION OF THE REFRACTORY EXCLUSION

■ On appeal, the parties agree that, pursuant to Tennessee choice of law rules, Indiana law controls this diversity action. According to Indiana insurance law, "[i]f insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. If there is an ambiguity, the policy should be interpreted most favorably to the insured. It should be construed to further the policy's basic purpose of indemnity." *Am. Nat'l Fire Ins. Co. v. Rose Acre Farms, Inc.,* 107 F.3d 451, 454 (7th Cir.1997) (quoting *Gen. Accident Ins. Co. of Am. v. Gonzales,* 86 F.3d 673, 675 (7th Cir.1996); *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992) (internal citations omitted)).

Although Indiana Harbor attempts to inject ambiguity into the language of the refractory exclusion contained in Hartford Steam Boiler's insurance policy, the wording is actually quite straightforward when analyzed in the context of the entire insurance contract. The basic premise of the policy is that the agreement "insures against all risks of direct physical loss or damage to Property Insured from perils not otherwise excluded, subject to the terms and conditions of this Policy." Against this backdrop, the refractory exclusion first provides that the "collapse of and/or failure of any refractory and/or refractory linings" are *not* covered by the

policy. The parties have agreed, therefore, that any damages to or failures of any refractory *will not* ordinarily be compensated by Hartford Steam Boiler.

That general exclusion from coverage is, however, partially modified by language allowing payment of insurance proceeds for any refractory collapse, failure, or other damage that "results directly from *other* physical damage not otherwise excluded by this policy." (Emphasis added.) The plain import of this exception to the exclusion from coverage is to emphasize that although damage resulting from the routine operation of a refractory will not be compensated under the policy, such payment will be made if the damage to the structure results from some outside source unconnected with the normal functioning of the coke ovens.

The district court correctly determined that only such an interpretation of the exclusion's language gives effect to the entire policy. Finding no evidence that the problems with the Indiana Harbor refractory were caused by "other physical damage," the district judge appropriately granted summary judgment to Hartford Steam Boiler on the issue of the applicability of the refractory exclusion.

## IV. APPLICATION OF THE INCREASE–IN–HAZARD EXCLUSION

■ The subject policy also states that the insurance contract "does not insure loss or damage caused by or resulting from any increase in hazard by any means within the knowledge and control of the Insured." Although the policy itself does not seek to define the operative terms of the exclusion, the New Jersey Supreme Court, citing a recognized treatise on the subject of insurance law, has explained:

An increase in hazard takes place when a new use is made of the insured property, or when its physical condition is changed from that which existed when the policy was written, and the new use or changed condition increases the risk assumed by the insurer.... Moreover, the insurer bears the burden of proving that the insured has increased the hazard.

*Dynasty, Inc. v. Princeton Ins. Co.*, 165 N.J. 1, 754 A.2d 1137, 1141 (2000) (citing 8 George J. Couch, *Cyclopedia of Insurance Law*, § 37A:291, at 329 (Mark S. Rhodes ed., 2d ed. rev. vol. 1985); § 37A:305, at 352).

The defendant argues in this appeal that Indiana Harbor has made a "new use" of the insured property by operating the coke ovens at a temperature in excess of what is called for by the design. Such *improper* use is not, however, a *new* use. The ovens are still utilized for the production of coke and nothing changed on the property from the time that Hartford Steam Boiler first assumed the risk of insuring the refractory. No modifications were made to the structure or the design (i.e., the undersized common tunnel) that resulted in the damage to the refractory. Thus, Indiana Harbor has not adduced sufficient evidence to justify application of the "increase-in-hazard" exclusion of the policy.

Based on the evidence before us, we find that the district court erred in granting summary judgment to the defendant on this issue. However, because the district court properly granted summary judgment to the defendant based on the refractory exclusion, any error in regard to the analysis of the "increase-in-hazard" exclusion policy was harmless.

## V. ASSESSMENT OF BAD FAITH DAMAGES

Indiana Harbor also suggests that the district court erred in failing to conclude

that Hartford Steam Boiler was guilty of bad faith in denying coverage to the plaintiff. In its appellate brief, however, Indiana Harbor concedes that "if this Court affirms the District Court's granting of summary judgment regarding insurance coverage, then [Hartford Steam Boiler's] denial of the claim cannot be in bad faith." (Appellant's Br. at 49). Given that the district court correctly determined that the refractory exclusion in the policy foreclosed insurance coverage for the damage to the ovens, the defendant could not have been guilty of bad faith in refusing to pay insurance proceeds. The district court, therefore, properly granted summary judgment to Hartford Steam Boiler on this claim.

## VI. EXCLUSION OF EVIDENCE SUPPORTING INSURER'S MOTION FOR SUMMARY JUDGMENT

Finally, during the proceedings in the lower court the plaintiff objected to an affidavit introduced by Hartford Steam Boiler, which included as exhibits the interviews of two Indiana Harbor officials. The district judge struck the exhibits holding that it could not consider unsworn statements when ruling on a motion for summary judgment. Under Rule 61 of the Federal Rules of Civil Procedure, a court "at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." In this case, even after ruling that the defendant's proffered evidence could not be considered in making a summary judgment ruling, the district court granted partial summary judgment to Hartford Steam Boiler and dismissed the plaintiff's complaint against the insurer. The defendant, therefore, suffered no prejudice as a result of this evidentiary ruling; and thus, it is unnecessary for us to make a determination as to the propriety of this evidentiary determination.

## VII. CONCLUSION

In conclusion, the district judge properly granted summary judgment to Hartford Steam Boiler and denied Indiana Harbor's claim for bad faith damages. Thus, we AFFIRM that court's ultimate judgment dismissing the claims filed by Indiana Harbor against Hartford Steam Boiler.